Rubye HENDERSON, Appellant,

v.

FORD MOTOR COMPANY and Pollard Friendly Ford, Appellees.

No. 8679.

Court of Civil Appeals of Texas, Amarillo.

Jan. 17, 1977.

Smith & Smith, Mark Smith, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Cecil Kuhne, Brock, Waters & Galey, Ralph Brock, Lubbock, for appellees.

ELLIS, Chief Justice.

In response to a suit by Citizens National Bank of Lubbock, Texas, for a deficiency judgment on a note executed by Rubye Henderson in connection with the purchase of an automobile, Mrs. Henderson filed a cross-action against the Bank, Pollard Friendly Ford and Ford Motor Company. She alleged breach of express warranty for alleged defects in the automobile against Ford and breach of warranty and fraud against Pollard Friendly Ford, the dealer. She sought recovery of actual and exemplary damages against Pollard and Ford. The court rendered an interlocutory judgment in favor of the Bank, and at the conclusion of all the evidence the trial court sustained the respective motions of Pollard and Ford for instructed verdict and rendered a final take nothing judgment against Mrs. Henderson. By this appeal Mrs. Henderson challenges such action of the trial court. The judgment of the trial court is affirmed.

On December 29, 1970, Mrs. Henderson purchased a Falcon (Torino)[1] from Pollard Friendly Ford, an independent Ford dealer, Lubbock, Texas. The only warranty she received from Pollard, the selling dealer, was a new car limited warranty given by Ford, the manufacturer, which provided:

FORD AND DEALER BASIC WARRANTY AND LIMITATION OF LIABILITY: 1970 MODEL PASSENGER CARS (EXCEPT MAVERICKS AND CORTINAS) AND LIGHT TRUCKS

---

Ford * * * and its Selling Dealer warrant, with respect to each 1970 model passenger car * * * built by Ford, that the Selling Dealer will repair or replace, at his place of business, any part (except tires and tubes which are warranted separately by their manufacturers) that is found to be defective in factory materials or workmanship in normal use * * * within 12 months from the date of original retail delivery * * *.

\* \* \* \* \* \*

Except for responsibility for personal injuries shown to have resulted from a defect, this warranty is expressly IN LIEU OF any other express or implied warranty, condition or guarantee with respect to the vehicle or any part thereof, including any implied WARRANTY OF MERCHANTABILITY OR FITNESS.

On the face of the Motor Vehicle Contract between Buyer and the Seller, wherein terms and conditions are set out, there appears the following provision:

(1) Buyer understands and agrees that the described vehicle is purchased AS IS, without warranty of merchantability or fitness, except as follows: _____. Any repair under warranty must be authorized by Seller and must be done in Seller's shop or at a shop designated by Seller.

Mrs. Henderson testified that shortly after the purchase she began having problems with the car. Her testimony and that of her witnesses, John Walker, a mechanic

---

1. Falcons were redesignated as Torinos by Ford Motor Company in June, 1970.

who inspected the car at her request, and Fulton Berry, Jr., a police officer who had driven the car, was primarily to the effect that there was improper fitting or insulation around the windshield and vent glasses, some holes and flaws in the fire wall, improper fitting of the door on the driver's side and imperfections in the exterior paint on the car. The mechanic also expressed to her the opinion that the car had some structural defects. However, Walker did not know how long Mrs. Henderson had owned the car when he first examined it and he did not check the mileage shown on the car. He thought he first saw the car in January or February of 1971.

Mrs. Henderson's testimony and the repair orders introduced in evidence clearly show that between December 29, 1970, the date she purchased the car, and March 31, 1971, the date she finally returned the car and left it at Pollard Friendly Ford, she had taken the car to Pollard for warranty work on three occasions: January 11, February 1 and February 9, 1971. She contends that the defects about which she complained were not corrected by the warranty work done prior to her return of the car on March 31. The evidence further shows that she had written a letter to Ford Motor Company complaining about the car. In response to her letter Ford sent its representative, Howard Paullus, to meet with her and seek to determine her complaints about the car and to see that all existing defects were remedied. On March 11, 1971, Ford's representative, Mrs. Henderson, Marvin Rogers, her lawyer at that time, and the service manager for Pollard, Arvil Walser, met with her at Pollard Ford's place of business. On this occasion the car was test driven for about ten miles, and Mrs. Henderson testified that she pointed out everything she thought was wrong with the car. Paullus assured her that all of the defects and problems she pointed out would be repaired. Also, Walser, Pollard's service manager, testified that Paullus told Mr. Rogers, her lawyer, in Mrs. Henderson's presence, that he would be happy to see if "we could do whatever was necessary to make that car acceptable for her," and Rogers responded

that he didn't believe anyone could ask for more.

The record indicates that she did not leave the car at Pollard Ford on March 11. A letter dated March 12, 1971 (the day after the above mentioned conference on March 11) addressed to and purportedly mailed to Mrs. Henderson, written by Glen R. Pollard in behalf of Pollard Friendly Ford, was introduced into evidence. The letter reads:

We wish to again invite you back to our dealership to enable us to repair the items you discussed with Mr. Paullus, Ford Service Representative, in your conversation with him, Mr. Rogers, and our service manager, Mr. Walser, on March 11, 1971. We stand ready, willing and able to perform any necessary repairs that may be needed under Ford's new vehicle warranty.

The letter indicates that copies were sent to Marvin Rogers, her attorney, Howard Paullus, the Ford representative and Don Castleberry, a loan officer of Citizens National Bank. Also, the record reflects that Mrs. Henderson had sent a complaint to Better Business Bureau dated 3–13–71. A copy of the complaint was sent to Pollard, and on March 16, 1971, Pollard responded on the Better Business Bureau form to the effect that Pollard was willing to do all necessary repair work. Also, a copy of his letter to Mrs. Henderson was attached to the response to Better Business Bureau.

She brought the car to Pollard Ford on either March 31 or April 1. The work order was dated April 1. Walser, the service manager, testified that he talked with Mrs. Henderson on this occasion when she brought the car in. He stated that Mrs. Henderson was present when the entries on the work order were made; that he went over each thing in detail, "just what she wanted fixed on the automobile," and "told the service adviser who was standing right there with his pad just exactly what to write down." The record reflects the following testimony by Walser:

Q  Did she ask that anything be put on there that was not put on there?

A  No, sir.

Q Did you put everything on the repair orders that she requested?

A Yes, I did. I had it put on the repair orders.

Mrs. Henderson testified on cross examination that she took the car back on March 31, and asked Pollard to fix the car under the warranty. Although she agreed to have the work done, she expressed doubt that they could do it. Also, she stated that she didn't know whether she would be satisfied if they did repair all of the things about which she had complained. She testified that she did not go back after March 31 to see whether the repairs had been made. Moreover, she further testified that on March 31, the day she returned the car to Pollard Ford, she went out and purchased another car. Neither she nor any other witness presented any testimony whatsoever that the car she purchased from Pollard was not repaired after she returned it on March 31.

The service manager for Pollard Ford, Mr. Walser, testified that between April 1, 1971, and about April 12, 1971, the car was completely repainted, the doors removed and adjusted and all of the various complaints and requests made by Mrs. Henderson were remedied. The Ford representative, Mr. Paullus, testified that after all of the requested work was completed he returned to Lubbock on April 17, 1971, to check all of the work done on the car. He found, after complete inspection and road testing, that all of the requested work had been done. Subsequently, the Bank repossessed the car. Mr. Castleberry, loan officer for the Citizens National Bank, testified that whenever a car is repossessed, the car is checked to determine whether there is work that needs to be done. The Bank's repossession sheet introduced into evidence showed repossession on June 10, 1971, and that the condition of each of the various essential items pertaining to the car was good.

The foregoing is a review of the material evidence. All of the evidence is that, after the Ford representative assured Mrs. Henderson all the defects would be repaired, every defect was repaired. There is no evidence whatsoever that every defect complained of by Mrs. Henderson was not completely corrected by April 12, 1971, which was less than three and one-half months after she had purchased the car.

Mrs. Henderson predicates her appeal on two points of error. In brief, these points include and relate to her contentions that the instructed verdict was erroneous because factual issues were raised as to: whether Pollard and Ford had breached the warranty; whether the limited warranty had failed in its essential purpose; and whether the expressed and implied representations by Pollard constituted fraud.

■ Initially, it is undisputed that Mrs. Henderson purchased the car from Pollard and there is no evidence of any privity of contract between Mrs. Henderson and Ford. In this case the claim of Mrs. Henderson is strictly for alleged economic loss, and there is no pleading or evidence that the product was unreasonably dangerous or that physical harm was caused to Mrs. Henderson. Under these circumstances it is well established that strict liability does not apply, and that Mrs. Henderson, as plaintiff, cannot recover against Ford in the absence of privity of contract. *Eli Lilly and Company v. Casey*, 472 S.W.2d 598 (Tex.Civ.App.— Eastland 1971, writ dism'd); *Thermal Supply of Texas, Inc. v. Asel*, 468 S.W.2d 927 (Tex.Civ.App.—Austin 1971, no writ). Thus, on the basis of lack of privity, it is our opinion that the instructed verdict as to Ford was proper.

■ Additionally, it is clear that the warranty was a limited warranty, and that the warranty in the instant case limited the obligation to repair or replace defective parts within a twelve month period. Further, under the provisions of § 2.316, Texas Business and Commerce Code, a warranty may expressly exclude any implied warranties. The only warranty given by Pollard was the same written limited warranty given by Ford. Under the terms of the Motor Vehicle Contract between the Buyer and Seller, it was expressly provided that the above described vehicle is purchased AS IS,

without warranty of merchantability or fitness, and "any repair under warranty must be authorized by Seller and must be done in Seller's shop. . . ." In this case, the "AS IS" language effectively excludes implied warranties under the express provisions of § 2.316, supra. In the light of the warranty given, the question is not whether defects existed in the automobile at the time it was purchased, but whether or not Ford and Pollard breached the warranty that Pollard would repair or replace any part found to be defective in factory materials or workmanship within twelve months from the date of the original retail sale and delivery.

Mrs. Henderson contends that there were fact issues as to the breach of warranty by Pollard and Ford. She argues that the evidence shows that all of the defects were not repaired or, alternatively, were not remedied within a reasonable time, and cites in support of such position the cases of Ford Motor Company v. Gunn, 123 Ga.App. 550, 181 S.E.2d 694 (1971), and General Motors Corporation v. Earnest, 279 Ala. 299, 184 So.2d 811 (1966). It is noted that in Gunn, the court stated that all efforts by Ford dealers to correct the problems had not been successful. In the instant case, the testimony is undisputed that between April 1 and April 13, 1971, all of the defects complained of by Mrs. Henderson were completely remedied and there is no evidence to the contrary. In Earnest, it is noted that the case was reversed and judgment rendered for the manufacturer on the ground that the claimant was not seeking recovery for breach of an express warranty but was seeking recission of the contract of sale against the dealer, and thus it was not an action against the manufacturer. Further, the court specifically stated that it was not deciding whether there was a fact issue for the jury as to the breach of express warranty. In view of the above mentioned significant factual distinctions and the vital differences in the pleadings, proof and remedies sought, we do not agree that the Gunn and Earnest cases are controlling here.

In the case of Lankford v. Rogers Ford Sales, 478 S.W.2d 248 (Tex.Civ.App.—El Paso 1972, writ ref'd n.r.e.), the court affirmed the action of the trial court in rendering summary judgment for Rogers Ford Sales, the dealer, and Ford Motor Company, the manufacturer, in a suit for damages for breach of warranty of merchantability of an automobile. The basic question involved in Lankford relates to the existence of genuine issues of material fact as to whether the warranty failed in its essential purpose whereby the plaintiff would be entitled to recover on a warranty of fitness and merchantability. During a period of eighteen months, the car was in the shop for repairs some 45 days for about 50 different defects. Although in each instance of breakdown repairs were admittedly made to rectify the defects, at times it would take one to five attempts to make the repairs. The pertinent language of the warranty is quite similar to that involved in the instant case with regard to repairing or replacing defective parts within a limited period of time (24 months in Lankford and 12 months in the instant case). In Lankford the plaintiff complained that the limited written warranty had failed in its essential purpose, alleging that after repeated repairs, the automobile was still not of merchantable quality and as such breached the defendant's implied warranty of merchantability and fitness.

Although the evidence in Lankford disclosed that there were numerous defects appearing over an extensive period of time, some of which required several attempts to correct and others rendering the vehicle unsuitable for use (power steering defect),[2] the court of civil appeals concluded that as a matter of law, the limited warranty (whereunder Ford, through implementation by the dealer, had made the needed repairs to rectify the defects) had not failed in its essential purpose. Thus, the court of civil

2. Even the service personnel of the repairing dealer advised the purchaser that this automobile developed more defects than would normally be expected for an automobile of this quality.

appeals affirmed summary judgment for the manufacturer and the repairing dealer in the purchaser's action for breach of warranty of fitness and merchantability, thereby effectively demonstrating that such evidence did not raise a fact issue of breach of the limited warranty with which the defendants had complied, and upon which they relied to prevail in this summary judgment action.

It is argued that in *Lankford* the plaintiff admitted the repairs had been made on each occasion that the car was returned for such repairs, while in the instant case Pollard did not repair the defects complained of and Mrs. Henderson was told by Pollard that nothing could be done about the car. There is some contention between the parties as to whether this conversation between Pollard and Mrs. Henderson related to the repairing of the car she had purchased or to her request for the return of the car she had "traded-in" (which had been sold for several weeks). In any event, in the instant case the evidence is undisputed that all of the complaints made by Mrs. Henderson were in fact repaired and remedied in four trips and within three and one-half months from the date of purchase. In *Lankford*, it sometimes took five trips to repair defects. In this case, Mrs. Henderson never returned after March 31, 1971, the fourth trip, to see if the defects were remedied. In *Lankford* and the instant case, the evidence is undisputed that the repairs of all defects complained of were in fact made (in *Lankford* within 15 months; in this case within 3½ months) and performance was had by the warrantors well within the provisions in limitation of the remedies and liabilities expressed in the limited warranty.

■ Mrs. Henderson contends that the evidence raised a fact issue as to whether the warranty failed to its essential purpose. However, there is no pleading by the plaintiff that she was entitled to recover because the warranty failed to its essential purpose, and, therefore, no jury issue was raised or could be submitted. *Travelers Insurance Company v. Marmolejo*, 383 S.W.2d 380 (Tex.1964). Further, there was no evidence that the warranty failed of its essential purpose, and thus no issue could have been submitted. In this case, a limited warranty to repair defects within the limitation prescribed without expense to the purchaser was given in lieu of any implied warranty of merchantability or fitness. Since this performance was within the provisions of the limited warranty, the warranty did not fail of its essential purposes. See *Lankford v. Rogers Ford Sales,* supra; §§ 2.316 and 2.719, Texas Business and Commerce Code.

■ In the instant case no evidence was presented as to the value of the automobile having the defects which Mrs. Henderson claimed it to have, and there was no evidence to support a finding of damages even if it is assumed that such claimed defects were never remedied. In any event judgment should have been rendered for the defendants because the plaintiff presented no proof as to the value of the automobile in its delivered or subsequent condition. *Bill McDavid Oldsmobile, Inc. v. Mulcahy*, 533 S.W.2d 160 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ). Although plaintiff has alleged exemplary damages, such damages cannot be recovered in a contract action (breach of warranty) such as this. See *Graham v. Turner*, 472 S.W.2d 831 (Tex.Civ.App.—Waco 1971, no writ) and cases cited therein. Thus, there is no evidence of damages that could be recoverable by the plaintiff in the suit for breach of warranty and this situation would justify the instructed verdict.

We have concluded that there is no evidence that Ford or Pollard refused to attempt to repair or replace the alleged defective parts in the automobile and that the evidence is uncontroverted that between April 1 and April 13, 1971, all defects complained of by Mrs. Henderson were replaced or repaired in accordance with the written limited warranty. Thus, the warrantors' performance was within the limitations of the warranty and there was no evidence of probative force to support a finding of breach of warranty against Ford or Pollard.

It is Mrs. Henderson's further contention that the court erred in directing a verdict in

favor of Pollard on the grounds that the pleadings supported by the evidence established a fact question as to whether the express and implied representations made to her by Pollard constituted a fraud. We disagree.

According to the record, the basic representations made by Pollard were that the vehicle in question was a "new" car. The record does not reflect that Pollard represented the car to be free of defect. In this regard, Pollard furnished the warranty of Ford and the selling dealer to remedy whatever defects may appear. The plaintiff accepted the car "as is" and received the warranty to repair or replace defective parts, subject to the limitations therein contained. The evidence discloses the title documents and other records which clearly show that this sale was the first sale and that this car was a new car as defined in Tex.Rev.Civ.Stat.Ann. art. 6687–1 § 9, i. e., an automobile which has not been subject to a first sale in this state or elsewhere. Also, during the trial, the attorney for Mrs. Henderson stipulated that "those titles show that it's a new car." Although an employee in Pollard's office by mistake typed the word "used" on the invoice, this entry does not effectively dispute the evidence of the new status of the car as shown by the various title papers and other documents and the stipulation of counsel. Moreover, the testimony of the mechanic, John Walker, who expressed some doubt as to whether the car was new does not serve to dispute the record which shows that the vehicle when delivered was "new" and further that all defects complained of were repaired. He did not see the car when it was new. At the time he saw the car it had been used. It is our opinion that there is no evidence of probative force that the car was not new when it was delivered to Mrs. Henderson. Further, there is no evidence to support the claim made by the appellant that the car was represented to be free of damage and defects.

■ The appellant admits that there was no proof of intentional fraud but relies on constructive fraud which is the breach of some legal or equitable duty that the law declares because of its tendency to deceive others or violate a confidential relationship or injure public interests, such as that referred to in the cases cited by appellant: *Archer v. Griffith*, 390 S.W.2d 735 (Tex. 1964) (attorney and client); and *Land v. Marshall*, 426 S.W.2d 841 (Tex.1968) (husband and wife).

■ Mrs. Henderson testified that she had dealt with Pollard's company on a prior occasion and that she trusted Pollard's personnel. However, we do not believe that such testimony and the events surrounding this transaction prove the existence of that close and confidential relationship of such nature as to form the basis of constructive fraud liability. The limited warranty and the contract of purchase signed by Mrs. Henderson whereby she purchased the car on an "as is" basis, the title papers and documents, together with the repair work and remedial action taken pursuant to the warranty, all demonstrate that there is no basis for a fraud action. In a fraud action the misrepresentation must be concerning a material fact. There is no evidence of probative force that the car was not in fact a "new" car. Even if there were evidence of elements of constructive fraud, and we hold there is none of probative force, the plaintiff could not prevail because of failure to present any evidence as to damage. There was no evidence as to the market value of the automobile as delivered, or that such market value was any less than the price paid. In the absence of proof of a misrepresentation and with no evidence of injury or damage, we hold that the fraud claim is without merit.

■ From a review of the entire record, we have concluded: there is no evidence of probative force of a breach of warranty; the warrantors' performance was within the terms of the limited warranty given and accepted; there is no pleading or evidence to support the contention asserted in this appeal that the warranty failed in its essential purpose; there was no showing of

actual or constructive fraud; and no damages were proven, either for breach of warranty or fraud.

For the reasons above stated no factual issues were raised as to whether Ford and Pollard breached the warranty and as to whether the representations made by Pollard constituted fraud. Accordingly, the instructed verdict in favor of Ford and Pollard was proper, and Mrs. Henderson's points of error are overruled.

The judgment of the trial court is affirmed.