**MERCEDES–BENZ OF NORTH AMER-ICA, INC., and Ryan Oldsmobile, Inc., Appellants,**

v.

**David Vincent DICKENSON, Appellee.**

No. 2–86–022–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 6, 1986.

Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Jr., Dallas, for Mercedes-Benz.

Gandy, Michener, Swindle, Whitaker & Pratt, J. Shelby Sharpe, Fort Worth, for Ryan Olds.

Shannon, Gracey, Ratliff & Miller, Tim G. Sralla, Fort Worth, for appellee.

Before FENDER, C.J., and BURDOCK and HILL, JJ.

## OPINION

FENDER, Chief Justice.

Defendants, Ryan Oldsmobile, Inc. (hereinafter "Ryan") and Mercedes-Benz of North America, Inc. (hereinafter "Mercedes") appeal from a judgment against them and in favor of plaintiff, David Vincent Dickenson, in an action brought for breach of warranty, negligence, and deceptive trade practices in the sale and repair of a 1982 Mercedes-Benz 300D. Dickenson originally only sued Ryan, the dealer, who impleaded Mercedes, the manufacturer, in a cross-claim for indemnity. The jury found Ryan and Mercedes jointly and severally liable for $8,679.30 in actual damages, plus attorney's fees. The jury awarded Dickenson additional damages of $3,000 from Ryan and $7,000 from Mercedes based on their finding that the defendants' actions were committed knowingly. The judgment further ordered Mer-

cedes to fully indemnify Ryan. Mercedes also appeals from the judgment on the question of Ryan's right to indemnity.

We affirm.

In April, 1982, Dickenson bought a 1982 Mercedes automobile from Ryan, an authorized Mercedes dealer, in Fort Worth. Ryan's salesman made a number of representations as to the quality and characteristics of the car in question. Dickenson signed a contract which included a disclaimer purporting to exclude all warranties except those found in the Mercedes warranty booklet to be delivered with the car. Dickenson did not receive a copy of the warranty booklet until the car was delivered. The warranty, running from the manufacturer only, limited Dickenson's remedies to repairs or replacements necessary to correct defects in material or workmanship. The repairs were to be performed by any authorized Mercedes-Benz dealer. This warranty and any warranties implied by law were limited to the first 36 months or 36,000 miles.

Within three weeks, Dickenson began experiencing trouble with the car, including a defect in the transmission. Numerous other defects appeared over the next eight months. Dickenson returned the car for repairs at least seven times during that period. The transmission was replaced at least two times and still did not operate properly. Several other defects were never corrected despite repeated attempts by the appellants to do so.

In December 1982, Dickenson offered to return the car to Ryan for a full refund or replacement with a car which was not defective. Both appellants refused this offer. Dickenson then solicited four bids on the car and sold it, in April 1983, to the highest bidder.

The jury's answers to the special issues can be summarized as follows:

1) Ryan knowingly represented that the car was of a particular standard, quality, or grade with respect to its transmissions when it was of another, which was a producing cause of damage to the plaintiff, *see* TEX.BUS. & COM.CODE ANN. secs. 17.50(a)(1), 17.46(b)(7) (Vernon Pamph.Supp.1986);

2) Ryan knowingly represented that its repair services were of a particular standard, quality, or grade when they were of another, which was a producing cause of damage to the plaintiff, *see id.*;

3) Mercedes knowingly engaged in an unconscionable act or course of action in failing to provide proper replacement parts in connection with repair made to the car, which was a producing cause of damage to the plaintiff, *see* TEX.BUS. & COM.CODE ANN. sec. 17.50(a)(3) (Vernon Pamph.Supp.1986);

4) Ryan knowingly made untrue express warranties to the effect that:

   a) the car was of the highest quality and the best car Mercedes had yet produced;

   b) the car would get 33 miles to the gallon on the highway and 27 miles to the gallon in town; and

   c) Ryan could or would and had properly repaired the car,

each of which were a producing cause of damage to the plaintiff, *see* TEX.BUS. & COM.CODE ANN. sec. 17.50(a)(2) (Vernon Pamph.Supp.1986);

5) Ryan and Mercedes were negligent in failing to properly repair the car and in failing to provide or install proper replacement parts for the car, each of which was a proximate cause of damage to the plaintiff; and

6) the car was not reasonably fit for its ordinary intended purposes when purchased, *see* TEX.BUS. & COM.CODE ANN. sec. 2.314 (Tex.UCC) (Vernon 1968); TEX.BUS. & COM.CODE ANN. sec. 17.50(a)(2).

The award of damages was based on these findings. Further findings were the basis for the award of indemnity. Those findings were:

1) Ryan followed Mercedes' factory guidelines in regard to the repair work it did on the car;

2) there was a defect or defects in the car when it left Mercedes' possession; and

3) such defects were the reason Ryan was unable to repair the car so as to make it reasonably fit for its ordinary intended purposes.

Finally, the jury found that 30% of the negligence which caused the plaintiff's damages was attributable to Ryan while 70% was attributable to Mercedes.

On appeal Ryan brings three points of error contesting the judgment in favor of Dickenson. Mercedes brings nineteen points of error also contesting that judgment. In addition, Mercedes brings five points of error contesting the judgment for indemnity of Ryan.

In its first point of error, Ryan claims that the judgment cannot stand because no evidence of damages was offered at trial. Ryan contends that the only offer of such evidence, Dickenson's opinion as to the market value of the car when purchased, was legally insufficient to establish the car's market value when purchased. Ryan asserts that Dickenson's testimony was "no evidence" of market value because, even though Dickenson was the owner of the car, he failed to show two things: 1) that he was familiar with the market value at the time of purchase of a car with defects such as his had, and 2) that his opinion referred to market value as opposed to personal value. *See Vista Chevrolet, Inc. v. Lewis,* 704 S.W.2d 363, 371 (Tex.App.—Corpus Christi 1985), *rev'd on other grounds,* 709 S.W.2d 176 (Tex.1986); *see also, Porras v. Craig,* 675 S.W.2d 503, 505 (Tex.1984).

■ The actual damages to which a plaintiff is entitled in a DTPA case are the same as damages recoverable at common law. *See Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 939 (Tex.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). The common law measure of damage for a case such as this one is the difference between the market value of the property as warranted and the market value of the property as delivered.

*See Johnson v. Willis,* 596 S.W.2d 256, 262 (Tex.Civ.App.—Waco), *writ ref'd n.r.e. per curiam,* 603 S.W.2d 828 (Tex.1980). It is uncontested that the owner of property can testify as to its market value even though he cannot qualify to testify about the value of like property belonging to someone else. *See Porras,* 675 S.W.2d at 504. The Court in *Porras* explained further:

Even an owner's testimony, however, is subject to some restrictions. In order for a property owner to qualify as a witness to the damages to his property, his testimony must show that it refers to market, rather than intrinsic or some other value of the property. This requirement is usually met by asking the witness if he is familiar with the market value of his property. [Cites omitted.]

*Id.* at 504–05.

■ Appellant Ryan interprets the above language as a modification of the general rule that an owner may testify as to the market value of his property. Ryan contends that unless the owner at some point declares he is "familiar with" or "knows" the market value of his property, he is not qualified to give an opinion of the property's market value. Without such a declaration, Ryan urges an owner's testimony is "no evidence" even where he states that his opinion refers to market rather than intrinsic value. We do not interpret *Porras* to make such a requirement.

The facts in *Porras* clearly show that the property owner's testimony of his property's value in no way referred to market value. The owner was asked, "Mr. Craig, what in your opinion was the value of the property...." *Id.* at 505. The owner was not asked if he had an opinion of his property's *market* value. Mr. Craig replied, "[a]bout fifteen [thousand dollars]." *Id.* When asked the basis for this opinion Mr. Craig answered:

Well I bought this land to build a retirement home on and I am fifty-seven and my wife is fifty-six and she's not—she's crippled so she wants to get out in the country, too. And we bought that

for that reason and now we are afraid to build out there. And the reason we're afraid is because of the exotic animals that will be put next to us. Also they patrol the fence with guns. A sign on their fence [sic] they'll shoot if you go across that fence. And about a month ago there was a fire started on the grass on my property and burned in under my trees and if my wife had been there by herself she couldn't have got away.

*Id.*

Although the Court found such testimony constituted no evidence, the language immediately following that determination shows that Ryan's interpretation of *Porras* is incorrect. The Court continued:

We should not be understood as retreating from the general rule that an owner is qualified to testify about the market value of his property. Moreover, this is not just a case in which the lawyer failed to ask his client if he was familiar with the market value of the property. Instead, in this case the owner's testimony affirmatively showed that he referred to personal rather than market value. *See Stinson v. Cravens, Dargan & Co.*, 579 S.W.2d 298 (Tex.Civ.App.—Dallas 1979, no writ). *Mr. Craig was qualified to give an opinion of the market value of his land; he simply failed to do so.*

*Id.* (emphasis added).

The Court stated that Mr. Craig, as owner, *was qualified* to give his opinion of his property's market value even without a declaration that he "knew" or was "familiar with" the market value. Mr. Craig's testimony was no evidence because he did not even attempt to refer to market value. According to *Porras*, a property owner is qualified to give his opinion of his property's market value as long as his testimony *refers* to market rather than intrinsic value. *See id.*

Moreover, even though an owner states that the values are only his opinion and fails to give the basis for such opinion, his testimony is admissible as evidence as long as he declares it refers to market value. *See Bower v. Processor and Chemical Ser-*

*vice, Inc.*, 672 S.W.2d 30, 32 (Tex.App.—Houston [14th Dist.] 1984, no writ). The court found that, "[d]espite the fact that on cross-examination Mr. Bartley answered affirmatively to questions which asked if he had guessed the values, the evidence was sufficient to support the judgment." *Id.*

Ryan's reliance on *Vista Chevrolet* is also misplaced. In that case, the court summarized the car owner's testimony as follows:

"[T]he value of it hindsight knowing that it's defective" was "nothing." She also testified that the automobile was worth "nothing" or was "really worthless" or was "really worth zero" because she couldn't depend on it and she couldn't sell it.

*Vista Chevrolet*, 704 S.W.2d at 371.

It is clear from this testimony that the owner did not qualify to give her opinion of her car's market value since her opinion referred only to the car's value *to her.* As the appellant in that case pointed out, the car would have some market value even if it was for simple salvage. *Id.* In light of the owner's testimony referring only to intrinsic value and the fact that no expert testimony regarding the actual market value was offered, the court held:

(1) that it was never shown that Mrs. Lewis was qualified to testify regarding the value of her automobile and (2) that there was no evidence regarding the actual market value of the automobile as received in its defective condition to support the submission of and the jury's finding in response to the DTPA damages issue. [Cites omitted.]

*Id.* at 372.

After reviewing the cases, we reject Ryan's interpretations of *Porras* and *Vista Chevrolet*. We will apply the law governing an owner's qualification to give his opinion on the market value of his property as set out in *Porras;* i.e., in order for a property owner to qualify as a witness to the damages to his property, his testimony must only show that it *refers* to market,

rather than intrinsic or some other value of the property.

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corp. v. King,* 686 S.W.2d 595, 597 (Tex. 1985); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *See In re King's Estate,* 244 S.W.2d at 661–62.

On the question of damages Dickenson, as owner, was asked by his attorney:

Q. [MR. MILLER:] If you had known the problems that the car had on April of 1982 when you bought it, do you have an opinion as to what its reasonable *market* value would have been that date with those defects?

. . . .

THE WITNESS: Yes, I have an opinion.

Q. (By Mr. Miller) What, in your opinion, would have been the reasonable *market* value in Tarrant County, Texas of that vehicle with those defects?

. . . .

A. (By the Witness) Approximately $8,500 less than what I paid for it.

Q. And you paid what for it?

A. $30,429 on the street.

Q. So that amount, less $8,500 would be your opinion of its *market* value in a defective condition?

A. Yes, sir.

Q. And the defects being those that you have testified to in this case?

A. Yes, sir. [Emphasis added.]

It is clear from the form of the questions asked that Dickenson's opinion refers to market value. In addition, Dickenson testified his opinion was based "on the fact that it had this enormous amount of problems." We hold that this testimony from the car's owner is at least some evidence of the car's

market value at the time of purchase. Ryan's first point of error is overruled.

In its point of error number twelve, appellant Mercedes voices the same no evidence complaint as to damages. For the reasons stated above, this point is overruled. Mercedes then contends that the evidence of damages is factually insufficient to support the jury's award of $8,679.30 as actual damages.

■ Where the challenge to a jury finding is that there was "insufficient evidence" to support the finding, we are to consider all the evidence in the case, both that in support of and that contrary to the finding, to determine if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). If the court so determines, the finding should be set aside and a new trial ordered. *See Garza,* 395 S.W.2d at 823.

The only evidence as to damages was given by Dickenson. He stated that he paid $30,429.00 for the car in April of 1982. He also gave his opinion that the April 1982 market value of the car he received was "[a]pproximately $8,500 less than what I paid for it." We have already held that Dickenson's testimony was some evidence of the car's market value when purchased. Neither Mercedes nor Ryan offered expert testimony to contradict Dickenson's opinion of the car's market value even though it is clear that, as the manufacturer and dealer of the car, expert witnesses would have been available to them. As Dickenson's testimony is the only evidence of the car's market value when purchased, we hold that it is factually sufficient to support the jury's award of $8,679.30 in actual damages. Mercedes' thirteenth point of error is overruled.

In its second point of error, Ryan argues, in effect, that there is no evidence to support the jury's findings that it made certain express warranties or that the implied war-

ranty of merchantability arose in Ryan's dealings with Dickenson. Ryan points to disclaimer language in the contract signed by Dickenson which says:

### STATEMENT OF NEW CAR WARRANTY

There are NO WARRANTIES, express or implied, made by the Selling Dealer or the manufacturer on the new vehicle or chassis described in this order, except the most recent printed Mercedes-Benz warranty or warranties applicable to such new vehicle or chassis which are made a part of this order as of here set forth in full. A copy of such Mercedes-Benz warranty or warranties will be furnished to the purchaser upon delivery of the vehicle or chassis, and they shall be expressly IN LIEU OF any other express or implied warranty, condition or guarantee on the new vehicle, chassis or any part thereof, including any implied WARRANTY OF MERCHANTABILITY or FITNESS and of any other obligation on the part of Mercedes-Benz, or the Selling Dealer. Purchaser acknowledges that this vehicle is not suitable for Trailer Towing unless specified in this order.

Ryan argues that, because of this disclaimer, the court should have granted its motion for judgment non obstante veredicto and entered judgment in favor of Ryan against Dickenson.

An argument to the effect that the trial court failed to grant a motion for judgment non obstante veredicto is a "no evidence" point of error. *See Southwestern Bell Tel. Co. v. Sims*, 615 S.W.2d 858, 861 (Tex.Civ. App.—Houston [1st Dist.] 1981, no writ). *See also Chemical Cleaning, Inc. v. Chemical Cleaning & Equipment Service, Inc.*, 462 S.W.2d 276, 277 (Tex.1970). We must, therefore, uphold the jury's findings if there is any evidence of probative value to support it while ignoring all evidence and inferences to the contrary. *See In re King's Estate*, 244 S.W.2d at 661–62.

The jury found that Ryan knowingly made express warranties concerning the car sold to Dickenson to the effect that 1) the car was of the highest quality, 2) the car would get 33 miles to the gallon in town, 3) the car was the best car Mercedes had yet produced, 4) Ryan could or would properly repair the car, and 5) Ryan had properly repaired the car. The jury also found that Ryan knowingly represented the car's transmissions and Ryan's repair services were of a particular standard, quality or grade when they were of another. Finally, the jury found that the car was not reasonably fit for its ordinary, intended purposes when Dickenson bought it.

A review of the testimony from the owner of Ryan Oldsmobile and one of its salesmen, establishes that there was at least some evidence to support each of the jury's holdings as to the express warranties and representations given. The testimony also shows that within three weeks of its purchase, the car suffered from a substantial number of defects, not the least of which was a faulty transmission which was replaced at least two times and still found to have some problem. This evidence is sufficient to show the car was not fit for its ordinary, intended purpose when purchased.

Having found the evidence supports the jury's findings that certain express and implied warranties were made, we must consider the effect the disclaimer in Ryan's contract had on these warranties.

Section 2.316 of the Texas Business and Commerce Code deals with the exclusion or modification of warranties and provides in pertinent part:

(a) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this chapter on parol or extrinsic evidence (Section 2.202) negation or limitation is inoperative to the extent that such construction is unreasonable.

(b) Subject to Subsection (c), to exclude or modify the implied warranty of

merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

(c) Notwithstanding Subsection (b)

(1) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

(2) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

(3) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

TEX.BUS. & COM.CODE ANN. sec. 2.316 (Tex. UCC) (Vernon 1968).

The disclaimer made in the present case seems sufficient to negate the implied warranty found by the jury. This finding is not controlling, however, since we do not believe the disclaimer effectively excluded the express warranties made by Ryan.

▇▇▇ The disclaimer in the contract says, in part:

There are NO WARRANTIES, express or implied, made by the Selling Dealer ... except the most recent printed Mercedes-Benz warranty or warranties.... A copy of such Mercedes-Benz warranty or warranties *will be furnished* to the purchaser *upon delivery* of the vehicle.... [Emphasis added.]

Under a disclaimer such as this, the buyer is not given the opportunity to read the warranty or warranties made until after the contract is signed. The consumer does not know, at the time he signs the contract, whether the warranty he will find in his glove box does or does not correspond with the express warranties that have been made to him. The fact is in this case that the buyer opened his warranty booklet to find that Ryan was making no warranty at all. Ryan's brief points out that, "[t]he warranty booklet Dickenson received with the automobile stated unequivocally on page 12 that the warranties ran from Mercedes." The principal purpose of section 2.316 is to protect a buyer from unexpected and unbargained for language of disclaimer by denying effect to such language when inconsistent with express warranties made. *See* TEX.BUS. & COM.CODE ANN. sec. 2.316 comment 1 (Tex.UCC). We find that the language found in the Mercedes-Benz warranty booklet cannot reasonably be construed consistently with the express warranties made. The disclaimer language is, therefore, inoperative.

▇▇▇ In addition, when a plaintiff sues both for breach of warranty under the DTPA and false representation under the DTPA, a proper disclaimer waives the breach of warranty action under the DTPA. *See Metro Ford Truck Sales, Inc. v. Davis,* 709 S.W.2d 785, 789 (Tex.App.— Fort Worth 1986, no writ); *McCrea v. Cubilla Condominium Corp.,* 685 S.W.2d 755, 758 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); TEX.BUS. & COM. CODE ANN. sec. 17.42 (Vernon Pamph. Supp.1986). It does not, however, waive the cause of action for misrepresentation under the DTPA. *See Metro,* 709 S.W.2d at 790.

In the present case, the jury found with respect to the transmissions in the car and Ryan's repair services, that Ryan had "[r]epresented that the car or repair services were of a particular standard, quality or grade when they were of another." The jury found that Ryan made these misrepresentations knowingly and that such statements were a producing cause of damage

to Dickenson. We hold that these findings alone were sufficient to support the judgment against Ryan. Ryan's second point of error is overruled.

■ Ryan's final point of error is a claim that the jury's findings do not support the judgment. The jury found that the defects in the car sold to Dickenson were present when the car left the manufacturer. It further found that these defects prevented Ryan from repairing the vehicle even though Ryan followed factory guidelines in working on the vehicle. Ryan asserts that, because of these jury findings, the trial court erred in failing to enter judgment in favor of Ryan against Dickenson.

The jury findings mentioned by Ryan were made in answer to special issues submitted to determine Ryan's claim for indemnity against Mercedes. Prior to making these findings, the jury found that Ryan had made certain representations which were not true and certain express warranties which had not been met. There is ample evidence to support these findings.

Ryan also complains that the judgment is wrong because it stood ready at all times to try to repair the defective car. Ryan urges that judgment should be rendered in its favor against Dickenson because Dickenson failed to give Ryan the opportunity to correct the defects. *See Import Motors, Inc. v. Matthews*, 557 S.W.2d 807, 809 (Tex. Civ.App.—Austin 1977, writ ref'd n.r.e.).

It is undisputed in this case that Ryan replaced the transmission in Dickenson's car at least twice because it was defective. Testimony from Ryan's own employee shows that, even then, the car was not operating properly. There was also testimony that several other defects in the car had never been finally repaired. After attempting to repair the car for eight months, it was still not running properly. We find that this evidence is sufficient to support the jury's findings that Dickenson gave the appellants reasonable opportunity to repair the car. Ryan's third point of error is overruled.

■ Appellant Mercedes' first point of error asserts Dickenson failed to plead and request a jury finding on failure of the warranty's essential purpose. Mercedes also claims there is no evidence to show the warranty failed of its essential purpose. Without such pleading, evidence, and fact finding, Dickenson is limited to the exclusive remedy of repair or replacement given in the Mercedes-Benz warranty booklet. *See Henderson v. Ford Motor Co.*, 547 S.W.2d 663, 669 (Tex.Civ.App.—Amarillo 1977, no writ).

The Texas Business and Commerce Code provides that a plaintiff may assert a claim for money damages "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose...." TEX. BUS. & COM.CODE ANN. sec. 2.719 (Tex. UCC) (Vernon 1968). The failure of a limiting clause's essential purpose is a matter properly pled and submitted to the jury when contested. *See Henderson*, 547 S.W.2d at 669. The failure to so plead or submit this issue is not fatal, however, where no special exception is made to the plaintiff's pleadings. *See Roark v. Allen*, 633 S.W.2d 804, 810 (Tex.1982).

The pleadings in *Roark*, a medical malpractice case, did not use the word "negligent" or otherwise indicate that the defendants failed to use ordinary care. *See id.* The pleadings said that the child was injured because of acts "jointly and severally" practiced by the defendants. The Court held that these allegations were sufficient to put the appellant on notice that plaintiffs sought to hold him liable for some acts connected with the child. If vague, the appellant should have specially excepted; otherwise, the defect was waived. *See id.* The Court explained:

> When there are no special exceptions, a petition will be construed liberally in favor of the pleader. *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 186 (Tex.1977). Also, "[t]he court will look to the pleader's intendment and the pleading will be upheld even if some element of a cause of action has not been specifically alleged. Every fact will be

supplied that can reasonably be inferred from what is specifically stated." *Gulf, Colorado & Santa Fe Railway Co. v. Bliss,* 368 S.W.2d 594, 599 (Tex.1963). A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim.

*Id.* at 809–10.

In the present case, Dickenson alleged that after having returned the car for repairs at least seven times, Mercedes' authorized dealer was unable to repair the car's defective transmissions, squealing brakes, rattles in the dashboard, and low gas mileage. Dickenson also alleged that the replacement transmissions installed in the vehicle "were not as warranted, but were defective and were, in turn, in need of replacement." These allegations are sufficient to inform Mercedes that Dickenson claimed the limited warranty failed of its essential purpose. Since Mercedes did not specially except to the omission, it cannot complain of the lack on appeal. *See id.;* TEX.R.CIV.P. 90–91.

■ Likewise, if an issue necessary to sustain a ground of recovery is omitted without an objection or request, the trial court will be deemed to have found the issue in such manner as to support its judgment. *See Roark,* 633 S.W.2d at 808–09; TEX.R.CIV.P. 279. Neither appellant objected when the court failed to submit an issue based on failure of the limited warranty's essential purpose. It is deemed that the issue was resolved in Dickenson's favor so as to support the judgment.

■ We must next consider whether there is some evidence to support this deemed finding. *See In re King's Estate,* 244 S.W.2d at 661–62. The parties to a contract are free to reasonably limit their remedies under section 2.719 but, where an apparently fair and reasonable limitation because of circumstances fails in its purpose or operates to deprive a party of the substantial value of the bargain, the limited remedy must give way to the general remedy provisions of the code. *See* TEX. BUS. & COM.CODE ANN. sec. 2.719 comment 1 (Tex.UCC). From the buyer's

standpoint, the purpose of the limited remedy is to give the buyer goods that conform to the contract within a reasonable time after the defect is discovered. *See Beal v. General Motors Corporation,* 354 F.Supp. 423, 426 (D.Del.1973). Good faith attempts to repair may be relevant to the issue of what constitutes a reasonable time. *See id.* at 427 n. 2. However, the limited remedy fails of its essential purpose and deprives the buyer of the substantial value of the bargain when the warrantor does not correct the defect within a reasonable time. *See id.* at 426; *see also Riley v. Ford Motor Company,* 442 F.2d 670, 673 (5th Cir.1971) (jury was not unjustified in its implicit finding that the warranty deprived the buyer of the substantial value of the bargain where buyer returned the defective car once and warrantor was unable to correct the defects).

■ In the present case, Dickenson returned the car for repairs at least seven times over an eight-month period. It is undisputed that the transmission was replaced at least two times and there is testimony from Mercedes' own employee that the last transmission was also defective. Dickenson also complained that other defects in the car were never corrected. We find from these facts that appellants had ample opportunity to try to correct the car's defects. These facts constitute at least some evidence that the limited warranty failed of its essential purpose since the warrantor was unable to correct the car's defects within a reasonable time. Mercedes' first point of error is overruled.

In point of error four, Mercedes complains that the jury's finding that Mercedes knowingly engaged in an unconscionable course of action because it failed to provide proper replacement parts, which was a producing cause of damage to the plaintiff, is not supported by the pleadings. In points of error two, three, five, six, nine, and ten, Mercedes challenges the legal and factual sufficiency of the evidence to support this finding and the finding that Mercedes negligently failed to properly repair and pro-

vide or install proper replacement parts, which was a proximate cause of injury to the plaintiff. Mercedes also contends there is no evidence that the car was not fit for its intended purpose when purchased.

■ These contentions are without merit. Dickenson's pleadings do allege that Mercedes' failure to provide proper replacement parts was unconscionable. *See* TEX. BUS. & COM.CODE ANN. sec. 17.50(a)(3). Also, the repeated appearance of numerous defects in the car, some of which remained uncorrected when Dickenson filed suit, are at least some evidence that Mercedes failed to properly repair and provide or install proper replacement parts. Appellant testified the car's problems appeared within three weeks of its purchase. It is undisputed that the transmission was replaced at least two times because it was defective. There is also testimony that the final transmission was not operating properly. These facts also constitute some evidence that the car was not fit for its intended purpose when purchased. *See* TEX.BUS. & COM. CODE ANN. sec. 2.314 (Tex.UCC); TEX. BUS. & COM.CODE ANN. sec. 17.50(a)(2). Furthermore, we do not find that this testimony was greatly outweighed by the testimony of the car's subsequent owner who could not verify what work had been done on the car by those who inspected it for defects. The evidence, therefore, is neither legally nor factually insufficient to support the findings as to these points.

The DTPA defines "unconscionable action or course of action" as follows:

(5) "Unconscionable action or course of action" means an act or practice which, to a person's detriment:

(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

TEX.BUS. & COM.CODE ANN. sec. 17.-45(5) (Vernon Pamph.Supp.1986). We hold that the jury was justified in finding that

Mercedes' failure to provide proper repair parts was unconscionable in that it resulted in a gross disparity between the value Dickenson gave in consideration for the car and the value of the car he received. Mercedes' points of error two through six, nine and ten are overruled.

Mercedes also urges the evidence is legally and factually insufficient to support the jury's finding that it engaged in the unconscionable action knowingly. Mercedes contends, therefore, the award of $9,000 ($2,000 under the automatic doubling provision and $7,000 awarded by the jury) is not justified under TEX.BUS. & COM.CODE ANN. sec. 17.50(b)(1) (Vernon Pamph.Supp.1986).

Section 17.50(b)(1) of the DTPA provides:

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of actual damages found by the trier of fact. In addition *the court shall award two times that portion of the actual damages that does not exceed $1,000.* If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000.

*Id.* (emphasis added). Clearly, the $2,000 award against Mercedes constitutes the automatic doubling award which does not depend on a finding that the conduct of the defendant was committed knowingly. *See id.* That portion of the damages awarded must stand.

The DTPA defines the word "knowingly" as follows:

(9) "Knowingly" means actual awareness of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim or, in an action brought under Subdivision (2) of Subsection (a) of Section 17.50, actual awareness of the act or practice constituting the breach of warranty, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

TEX.BUS. & COM.CODE ANN. sec. 17.-45(9) (Vernon Pamph.Supp.1986). The court's instruction defining "knowingly" closely tracks this provision's language. While only the first part of this definition is applicable when questioning whether an unconscionable action was committed knowingly, there was no objection to the submission of the complete definition. After considering all the evidence in the record, we hold the evidence is both legally and factually sufficient to support this finding. We cannot say the jury was unjustified in finding Mercedes was actually aware of the falsity, deception, or unfairness of its unconscionable action since Mercedes knew that its repeated attempts to provide proper replacement parts for the car had failed at least two times. The jury's award of $7,000 must, therefore, stand. Mercedes' fourteenth point of error is overruled.

In its seventh point of error, Mercedes contends that the court erred in submitting an issue on the implied warranty of merchantability to the jury. See TEX.BUS. & COM.CODE ANN. sec. 2.314 (Tex.UCC); TEX.BUS. & COM.CODE ANN. sec. 17.-50(a)(2). Mercedes points to its disclaimer which purports to negate the implied warranty of merchantability. The disclaimer to which Mercedes refers negates all warranties, express and implied, "except the most recent printed Mercedes-Benz warranty or warranties ... [which] will be furnished to the purchaser upon delivery of the vehicle...." The warranty booklet delivered with Dickenson's car stated, "ANY WARRANTIES IMPLIED BY LAW ARE LIMITED TO 36 MONTHS OR 36,000 MILES FROM THE DATE OF INITIAL OPERATION, WHICHEVER EVENT SHALL FIRST OCCUR." Therefore, the implied warranty of merchantability, about which special issue number 7 inquires, was not completely negated. This implied warranty was only limited to 36 months or 36,000 miles from the date of initial operation. At the time Dickenson made his demand, he had driven the car some 12,000 miles in less than 12 months time, well within the limitation period. The special issue on the implied warranty of merchantability was proper. Mercedes' seventh point of error is overruled.

Mercedes next contends that the answer to special issue number 7 cannot be used to support a judgment in favor of Dickenson because it irreconcilably conflicts with the jury answer to special issue number 3(a). In answer to special issue number 7 the jury found the car was not reasonably fit for its ordinary, intended purposes. Mercedes alleges that in answer to special issue number 3(a) the jury found Mercedes was not guilty of distributing a defective car.

A court is under the duty to reconcile apparently conflicting jury findings if at all possible. See Huber v. Ryan, 627 S.W.2d 145, 145 (Tex.1981). The presumption is always that the jury did not intend to return conflicting answers. See Traywick v. Goodrich, 364 S.W.2d 190, 191 (Tex.1963). In reviewing the jury findings for conflict the threshold question is whether the findings are about the same material fact. See Bender v. Southern Pac. Transp. Co., 600 S.W.2d 257, 260 (Tex. 1980).

The findings in question do not address the same material fact. Mercedes has misinterpreted the jury's answer to special issue 3(a). The question in pertinent part was set out as follows:

Did Defendant Mercedes-Benz of North America, Inc., engage in an unconscionable action or course of action in connection with the following matters, if any ....

| | | COLUMN 1 | | COLUMN 2 | | COLUMN 3 | |
|---|---|---|---|---|---|---|---|
| | | Whether actions occurred | | Whether action was done knowingly | | Whether action was a producing cause of damage to Plaintiff | |
| | | YES | NO | YES | NO | YES | NO |
| (a) Distributing a defective car | | ___ | X | ___ | ___ | ___ | ___ |

The word "actions" in column 1 refers to the phrase "unconscionable action or course of action" in the main part of the question. The jury's negative answer did not, therefore, absolve Mercedes of guilt in

distributing a defective car. Rather, it found that Mercedes did not engage in unconscionable action in distributing a defective car. This interpretation is consistent not only with the answer to special issue number 7 but also with the answer to special issue number 13 in which the jury found there was a defect or defects in the car when it left Mercedes' possession. Mercedes' eighth point of error is overruled.

■■■ In point of error number eleven, Mercedes complains that the court erred in admitting into evidence plaintiff's Exhibit Number 4. This exhibit is a letter from Ryan's attorney to the Zone Manager for Mercedes. Mercedes claims that the letter is an offer of settlement, and it is, therefore, inadmissible hearsay the admission of which is reversible error. *See Verschoyle v. Holifield,* 132 Tex. 516, 123 S.W.2d 878, 886 (1939).

An offer of compromise has been defined as an agreement in which a party concedes some right to which he believes he is entitled in order to bring about a mutual settlement. *See Duval County Ranch Co. v. Alamo Lumber Co.,* 663 S.W.2d 627, 634 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.). Ryan does not make any concessions to Mercedes in this letter. Rather, the letter demands that Mercedes agree to replace Dickenson's car or take notice that Ryan will seek indemnification from Mercedes in any action filed by Dickenson against Ryan. The trial court could have found, in its discretion, that the letter was more in the nature of an ultimatum than an offer to compromise. *See id.* We find no abuse of the trial court's discretion. Mercedes' eleventh point of error is overruled.

Mercedes' last five points of error deal with issues raised in Ryan's claim for indemnity from Mercedes. In four separate arguments, Mercedes claims the court erred in entering judgment on the verdict for indemnity of Ryan. Two of those arguments are that there is no evidence to support the jury's findings supporting this award, and the jury's answer to special issue number 13 fatally conflicts with its answer to special issue number 3(a).

■■■ A manufacturing defect may be established by circumstantial evidence. *See Mahan Volkswagen, Inc. v. Hall,* 648 S.W.2d 324, 328 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). Where the defect is latent, the plaintiff need not rebut by direct evidence all the conceivable possibilities which would account for the defect, other than its existence at the time of sale. *See Darryl v. Ford Motor Company,* 440 S.W.2d 630, 632 (Tex.1969).

■■■ In answer to special issues 13 and 14 the jury found that the car had a defect or defects in it when it left Mercedes' possession and these defects were the reason Ryan was unable to repair the car. There is uncontroverted testimony that the car's defects began to appear within three weeks of its sale to Dickenson. The testimony is also unchallenged that Ryan's factory trained service personnel used factory supplied parts in attempting to repair the car. The jury found that Ryan's service personnel followed factory guidelines in making the repairs. We hold that this evidence is legally sufficient to support the jury's inferences that the car had a defect or defects in it when it left Mercedes' possession and that these defects prevented Ryan from properly repairing the car. Mercedes' seventeenth and eighteenth points of error are overruled.

In point of error number nineteen, Mercedes claims that the jury's answer to special issue number 13 fatally conflicts with the answer to special issue number 3(a). We have already shown how Mercedes has misinterpreted the jury's finding in special issue number 3(a). For the same reason, we find no conflict in these two jury findings. Point of error nineteen is overruled.

In the remaining two points of error, Mercedes complains that Ryan is not entitled to indemnity under Texas law. Mercedes contends that Ryan's claim for indemnity is based on strict products liability law. Under this theory, Ryan could not recover unless it was an "innocent" retailer

and then, only for liability based on physical harm to the consumer. *See Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 819 (Tex.1984); *Ling, Oliver, O'Dwyer Elec. v. Ladd Tool Co.*, 702 S.W.2d 658, 659–60 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). We do not agree, however, that Ryan's claim for indemnity is restricted to a products liability theory of law.

The DTPA allows anyone against whom a DTPA action has been brought to seek indemnity from one who, under the statute law or at common law, may have liability for the damaging event of which the consumer complains. *See* TEX.BUS. & COM. CODE ANN. sec. 17.55A (Vernon Pamph. Supp.1986). Although common law indemnity has been severely restricted, common law indemnity for liability of a vicarious nature survives. *See Bonniwell*, 663 S.W.2d at 819; *B & B Auto Supply v. Central Freight Lines, Inc.*, 603 S.W.2d 814, 817 (Tex.1980).

Under the general rules of agency, an agent is entitled to indemnity when its liability arises from conduct performed for the benefit and under the direction of the principal as a good faith execution of the agency relationship. *See Oats v. Dublin Nat. Bank*, 127 Tex. 2, 90 S.W.2d 824, 829 (1936); *Mortgageamerica v. Am. Nat. Bank of Austin*, 651 S.W.2d 851, 857 (Tex.App.—Austin 1983, writ ref'd n.r.e.); *Mira-Pak, Inc. v. G.E. Posey Corp.*, 566 S.W.2d 86, 89–90 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). The existence of an agency relationship is a question of law determined by the agreement between and the words and conduct of the parties. *See Polk Terrace, Inc. v. Harper*, 386 S.W.2d 588, 592 (Tex.Civ.App.—Tyler 1965, writ ref'd n.r.e.). An authorized agent acts within the scope of actual and apparent authority when it makes representations which do not exceed the principal's own representations. *See id.*

In the present case it is clear that an agency relationship, in fact, did exist between Ryan and Mercedes. It is undisputed that Ryan is an authorized dealer for Mercedes.

It also cannot be said that Ryan was not acting for the benefit and under the direction of Mercedes. Under Mercedes' warranty, any authorized Mercedes dealer was required to make the repairs or replacements necessary to correct defects in material or workmanship. Testimony that Ryan's factory trained service personnel used factory supplied parts is uncontradicted. In addition, the jury found that Ryan's personnel followed factory guidelines at all times in attempting to repair the car, that the defects were in the car when it left Mercedes' possession, and that these defects made it impossible for Ryan to successfully repair the car.

Finally, we do not believe that the representations made by Ryan exceeded Mercedes' own representations as found, for example, in its warranty booklet, and those made by its own representative. Mercedes' representations include that any authorized dealer will make any repairs and replacements necessary to correct a car's defects, that the equipment on the car, as well as replacement parts, meet exacting quality control standards, and that it makes fine cars which hold up well and should last a long time. In light of these facts we hold that Ryan is entitled to full indemnity from Mercedes since its liability arises from conduct performed for the benefit and under the direction of Mercedes, in a good faith execution of the agency relationship. Mercedes' fifteenth and sixteenth points of error are overruled.

The judgment is affirmed.