United States Court of Appeals,
Fifth Circuit.

No. 90-1111.

John V. McMILLAN, et al., Plaintiffs,

John DiPalma and Palmnold-McMillan Joint Venture, Plaintiffs-Appellants,

v.

MBANK FORT WORTH, N.A., et al., Defendants,

Federal Deposit Insurance Corporation as receiver for MBank Fort Worth, N.A., Defendant-Appellee,

and

Bank One Texas, N.A., f/k/a Deposit Insurance Bridge Bank, N.A., Intervenor-Appellee.

Oct. 14, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before HIGGINBOTHAM and EMILIO M. GARZA, Circuit Judges, and BUCHMEYER[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

This case requires us to determine the propriety of the district court's judgment *non obstante veredicto*[1] on claims arising from the alleged breach of an oral loan agreement. Finding those claims barred as a matter of law by the doctrine enunciated in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 910, 86 L.Ed. 956 (1942), we affirm.

I

This action arose out of the purchase, and attempted purchase, of various tracts of commercial real estate. In May 1985, MBank Fort Worth, N.A. ("MBank") loaned $6.3 million to Shady Valley West Joint Venture III ("Shady Valley"), to enable Shady Valley to purchase a 53-acre tract of land

---

[*]District Judge of the Northern District of Texas, sitting by designation.

[1]A judgment n.o.v. is now referred to as a judgment as a matter of law. *See* Fed.R.Civ.P. 50 (effective December 12, 1991).

("Shady Valley tract").[2] The $6.3 million loan was guaranteed by John V. McMillan, John DiPalma, W. James Conrad, and Charles Powell. In July 1987, McMillan, DiPalma, and the Palmnold-McMillan joint venture (collectively "plaintiffs"), asked MBank for a $3.5 million loan, to enable them to purchase a 107-acre tract of land ("M-1 tract"), adjacent to the Shady Valley tract. By this time, Shady Valley had defaulted on its $6.3 million loan. On July 6, MBank's executive vice-president, John Wessler, allegedly made an oral loan agreement to provide the loan. The next morning, however, Wessler informed DiPalma that MBank was not going to make the loan.

The plaintiffs subsequently brought suit in state court for breach of contract and breach of the duty of good faith and fair dealing. MBank counterclaimed against the plaintiffs and Conrad, Powell, and Shady Valley ("the third-party defendants") for the outstanding balance of the $6.3 million loan to Shady Valley. The jury awarded plaintiffs $2,658,778.00 on its breach of contract claim, and $1.8 million on its bad faith claim. Concerning MBank's counterclaims, the jury awarded MBank $4.5 million, representing the outstanding balance of the Shady Valley loan.

Upon MBank's motion, the state court entered judgment n.o.v. for MBank on all of the plaintiffs' claims.[3] On March 28, 1989, the Comptroller of the Currency declared MBank insolvent and appointed the FDIC as receiver ("FDIC-Receiver"). The FDIC-Receiver sold almost all of MBank's assets, including the $6.3 million Shady Valley note, but retained MBank's liabilities, including any potential liabilities arising from the plaintiffs' claims.[4]

During the pendency of an appeal in state court, and after McMillan and the Palmnold-McMillan joint venture filed for federal bankruptcy relief, the FDIC-Receiver removed the action to

---

[2]Shady Valley included W. James Conrad and Charles Powell.

[3]The state court also entered judgment n.o.v. on MBank's counterclaim, changing the amount of the award from $4.5 million to $5.3 million. Because the plaintiffs do not challenge this enhancement on appeal, we deem the issue abandoned. *See Hobbs v. Blackburn,* 752 F.2d 1079, 1083 (5th Cir.) (stating that issues neither raised nor briefed on appeal are deemed abandoned), *cert. denied,* 474 U.S. 838, 106 S.Ct. 117, 88 L.Ed.2d 95 (1985).

[4]On March 31, the third-party defendants filed motions for new trial, for judgment, and to disregard the jury verdict. By its order dated December 18, 1989, the district court denied these motions in their entirety.

federal district court, pursuant to 12 U.S.C. § 1819 (1988).[5] The plaintiffs filed a motion to remand the action to state court, as well as a motion to vacate the judgment n.o.v., pursuant to Fed.R.Civ.P. 60(b). The district court denied both these motions and, in effect, adopted the state court judgment n.o.v. as its own, 129 F.R.D. 503.

The plaintiffs appeal,[6] contending that: (a) removal to federal court was improper; (b) the district court abused its discretion by denying their Rule 60(b) motion; and (c) the judgment n.o.v. was improper.[7]

---

[5]Section 1819 has since been amended by the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") of 1989, to provide the FDIC broad powers in removing actions from state to federal court. *See* 12 U.S.C.A. § 1819(b)(2) (1989). Section 1819(b)(2) now provides:

> (A) In General
>
> Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.
>
> (B) Removal
>
> Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court.

We have applied § 1819(b)(2) to a removal occurring before the section's effective date. *See Matter of Meyerland Co.,* 960 F.2d 512, 514 (5th Cir.1992) (en banc) (applying § 1819(b)(2) to allow removal occurring before statute's effective date, notwithstanding pending state appeal), *cert. denied,* --- U.S. ----, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993).

[6]McMillan has since settled with the FDIC-Receiver, and is no longer a party to this appeal.

[7]The FDIC-Receiver argues that the plaintiffs have not perfected an appeal of the judgment n.o.v., because "[plaintiffs'] notice only designates [as an order from which appeal is taken] the district court's Order denying [plaintiffs'] motion to vacate the JNOV, pursuant to FRCP Rule 60(b)." Brief for FDIC-Receiver at 9-10. We disagree. The plaintiffs' appeal of the order denying their Rule 60(b) motion sufficiently put the FDIC-Receiver on notice that they were also appealing the judgment n.o.v. *See* Record on Appeal vol. 3, at 607 (notice of appeal) ("Notice is hereby given that [the plaintiffs] hereby appeal ... from the Order Denying Plaintiffs' Motion to Vacate the Judgment of the State Court pursuant to Federal Rule of Civil Procedure 60(b)(1) and 60(b)(6) *and authorizing the entry of a final judgment as rendered by the state district court....*" (emphasis added)). Moreover, the FDIC-Receiver does not allege that it has been prejudiced or misled by any irregularity in the notice of appeal. *See Sanabria v. United States,* 437 U.S. 54, 67 n. 21, 98 S.Ct. 2170, 2180 n. 21, 57 L.Ed.2d 43 (1978) ("A mistake in designating the judgment appealed from is not always fatal, so long as the intent to appeal from a specific ruling can fairly be inferred by probing the notice and the other party was not misled or prejudiced.").

II

A

The plaintiffs first contend that the removal of the action, after McMillan and the Palmnold-McMillan joint venture had filed for bankruptcy relief, violated the automatic stay provisions of 11 U.S.C. § 362(a) (1988). *See* Brief for Plaintiffs at 44-47.

Section 362(a) provides that a petition in bankruptcy:

[O]perates as a stay, applicable to all entities, of—

(1) the commencement or *continuation,* including the issuance or employment of process, of a judicial, administrative, or other action or *proceeding against* the debtor ... or to recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(a) (emphasis added). As the statute clearly indicates, § 362(a) only stays those "proceeding[s] against the debtor," *see Freeman v. Commissioner of Internal Revenue,* 799 F.2d 1091, 1092-93 (5th Cir.1986), thereby "protect[ing] the debtor's assets, provid[ing] temporary relief from creditors, and further[ing] equity of distribution among the creditors by forestalling a race to the courthouse." *GATX Aircraft Corp. v. M/V Courtney Leigh,* 768 F.2d 711, 716 (5th Cir.1985).

In determining whether a continuing proceeding, such as the removal of this action, is against the debtor, we normally examine the posture of the case at the initial proceeding. *See Freeman,* 799 F.2d at 1092-93 (holding that where an action is brought by the debtors at the initial proceeding, the appeal of that action is not a continuing proceeding against the debtors). Our situation is complicated somewhat by the fact that, in addition to the plaintiffs bringing suit against MBank at the initial proceeding, MBank filed counterclaims against the plaintiffs and third-party defendants. Thus, the posture of this case at its initial proceeding is ambiguous. However, as the district court correctly pointed out, the posture of the action at the time of removal "takes it out of the scope of Section 362." Record on Appeal vol. 2, at 365. By the time the action was removed to federal court, MBank was no longer a party, and the FDIC, appointed as receiver for MBank prior to removal, had transferred all of its interests in any of MBank's counterclaims against the plaintiffs. Thus, the removal of the action to federal court constituted a continuing proceeding of plaintiffs' claims against the FDIC-Receiver, rather than a continuing proceeding of MBank's counterclaims against the

plaintiffs.  We therefore hold that removal of the action against the FDIC-Receiver was proper.

B

The plaintiffs next contend that the district court erred in denying their motion to vacate judgment n.o.v., pursuant to Fed.R.Civ.P. 60(b)(6).  We initially examine the basis of our jurisdiction to decide this issue.  *See Mosley v. Cozby,* 813 F.2d 659, 660 (5th Cir.1987) ("This Court must examine the basis of its jurisdiction, on its own motion, if necessary.").  A Rule 60(b) motion cannot be filed until a final judgment has been entered.  *See* Fed.R.Civ.P. 60(b).  Assuming, as the plaintiffs must,[8] that the district court's denial of the plaintiffs' motion to vacate judgment n.o.v. was a final judgment for purposes of Rule 60(b), the plaintiffs' motion—seeking relief from a final judgment—was premature.  Accordingly, the denial of the plaintiffs' Rule 60(b) motion is not a proper issue before this Court.[9]

Even were the Rule 60(b) issue properly before us, we would find no abuse of discretion in the district court's denial of the motion.  *See Williams v. Brown & Root, Inc.,* 828 F.2d 325, 328 (5th Cir.1987) (reviewing denial of Rule 60(b) motion for abuse of discretion).  Rule 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:  (1)

[8]If the order denying the plaintiffs' Rule 60(b) motion was not a final judgment, then the district court did not enter a final judgment upon which the plaintiffs could have based their motion.  To the extent that the plaintiffs may have based their Rule 60(b) motion in federal district court upon the state court's entry of final judgment, we note that a Rule 60(b) "motion is made in the court that rendered the judgment."  Restatement Second of Judgements § 78 (1982).

[9]Evidently, the district court's order denying the plaintiffs' Rule 60(b) motion was the vehicle in which the district court adopted the state court judgment n.o.v.  *See* Record Excerpts at 72 (district court order) ("Therefore, Plaintiffs' Motion to Vacate the State Court Judgment is hereby in all things DENIED.  The Final Judgment entered on 6 March 1989 shall stand.").  The district court's disposition of the action roughly corresponds with the framework we outlined in *Meyerland* for disposing of a case which is being appealed in state court when removal is effected.  According to *Meyerland,* "the district court [should] take the state judgment as it finds it, prepare the record as required for appeal, and forward the case to a federal appellate court for review."  *Id.,* 960 F.2d at 520;  *see also Matter of 5300 Memorial Investors, Ltd.,* 973 F.2d 1160, 1162 (5th Cir.1992) (citing *Meyerland* ).  We further note that the district court's failure to reenter the state court judgment on a document separate from its order, *see* Fed.R.Civ.P. 58, does not deprive this Court of jurisdiction.  *See Bankers Trust Co. v. Mallis,* 435 U.S. 381, 387, 98 S.Ct. 1117, 1121, 55 L.Ed.2d 357 (1978) (holding that "[t]he same principles of commonsense ... that led the Court ... to conclude that the technical requirements for a notice of appeal were not mandatory where the notice "did not mislead or prejudice' the appellee demonstrate that parties to an appeal may waive the separate-judgment requirement of Rule 58").

mistake, inadvertence, surprise, or excusable neglect; ... (6) any other reason justifying relief from the operation of the judgment.

The plaintiffs based their Rule 60(b) motion upon subsection (6), arguing that the judgment n.o.v. was improper because MBank did not move for a directed verdict in state court prior to obtaining the judgment n.o.v. and because the trial evidence supported the jury verdict. *See* Record Excerpts at 58-59. As the district court correctly pointed out, these arguments are claims of legal error or mistake, which are subsumed under subsection (1). *See Pierce v. United Mine Workers of America Welfare,* 770 F.2d 449, 451 (6th Cir.1985), *cert. denied,* 474 U.S. 1104, 106 S.Ct. 890, 88 L.Ed.2d 925 (1986). A petitioner warrants relief under Rule 60(b)(1) when he demonstrates that a mistake is attributable to special circumstances and not simply an erroneous legal ruling. *See Chick Kam Choo v. Exxon Corp.,* 699 F.2d 693, 695 (5th Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 98, 78 L.Ed.2d 103 (1983). A motion for relief under Rule 60(b)(1) is "not a substitute for the ordinary method of redressing judicial error—appeal." *Id.* at 696. As set forth above, the plaintiffs' claims of mere legal error would not merit relief under Rule 60(b)(1).

C

Lastly, the plaintiffs contend that the judgment n.o.v. was improper, regarding their claims against the FDIC-Receiver.[10] Generally, a judgment n.o.v. can be sustained "only if we find that on all of the evidence no reasonable juror could arrive at a verdict contrary to the district court's conclusion." *Ellison v. Conoco, Inc.,* 950 F.2d 1196, 1203 (5th Cir.) (citing *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969)), *cert. denied,* --- U.S. ----, 113 S.Ct. 3003, 125 L.Ed.2d 695 (1992). We need not undertake this inquiry, however, since we conclude that *D'Oench, Duhme* bars the plaintiffs' claims arising from the alleged breach of the oral agreement as a matter of law. *Cf. Bowen*

---

[10]We reject at the outset the plaintiffs' argument that MBank was required to move for a directed verdict prior to the state court's entry of judgment n.o.v. Texas law, unlike Fed.R.Civ.P. 50(b), does not require that a motion for directed verdict precede a motion for judgment n.o.v. MBank's failure to comply with Fed.R.Civ.P. 50(b) in state court is of no consequence. *See* Fed.R.Civ.P. 81(c) (stating that the Federal Rules of Civil Procedure "apply to civil actions removed to the United States district courts from the state courts and govern procedure *after* removal" (emphasis added)); *see also Meyerland,* 960 F.2d at 520 ("For instance, if the notice of appeal was adequate in the state court system, it should be deemed adequate when it enters the federal courts, regardless of whether the state technical requirements for notice of appeal differ from the federal.").

*v. FDIC,* 915 F.2d 1013, 1015 (5th Cir.1990) (reversing jury verdict without examining evidence because claims barred as a matter of law by the *D'Oench, Duhme* doctrine). We further note that the FDIC-Receiver, as it is urging the affirmance of a favorable judgment that it inherited as an asset when it became receiver of MBank, may raise the *D'Oench, Duhme* doctrine as a defense for the first time on appeal. *See Matter of Meyerland Co.,* 960 F.2d 512, 514 (5th Cir.1992) (en banc) (dicta), *cert. denied,* --- U.S. ----, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993); *RTC v. McCrory,* 951 F.2d 68, 71-72 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 459, 121 L.Ed.2d 368 (1992); *cf. Thurman v. FDIC,* 889 F.2d 1441, 1446-47 (5th Cir.1989) (establishing limits on the power of regulators to make new arguments on appeal when they did not participate at trial); *Olney Sav. & Loan Ass'n v. Trinity Bank Sav. Ass'n,* 885 F.2d 266, 275 (5th Cir.1989) (same).

Briefly stated, the *D'Oench, Duhme* doctrine "protects the FDIC, as receiver of a failed bank or as purchaser of its assets, from a borrower who has "lent himself to a scheme or arrangement' whereby banking authorities are likely to be misled." *Bowen,* 915 F.2d at 1015 (quoting *Beighley v. FDIC,* 868 F.2d 776, 784 (5th Cir.1989)). "In particular, *D'Oench* bars the use of unrecorded agreements between the borrower and the bank as the basis for defenses or claims against the FDIC. The agreement need not implicate a specific obligation, such as a note or other asset held by the FDIC. Simply put, transactions not reflected on the bank's books do not appear on the judicial radar screen either."[11] *Id.* at 1015-16 (citations omitted).

For example, in *Bowen* the plaintiffs sued a state bank for the breach of an oral loan promise. After the FDIC-Receiver removed the action to federal court, the plaintiffs prevailed on their claims before a jury. We reversed, finding that the plaintiffs' claims arising from the bank's oral loan promise were barred by *D'Oench, Duhme. See id.* at 1014-16; *see also Beighly,* 868 F.2d at 784 ("[The plaintiff's] alleged oral loan agreement to finance future loans is not clearly evidenced in the bank's records, and would not be apparent to bank examiners. Such an unwritten, unrecorded agreement is simply a secret side agreement that the [Supreme] Court invalidated almost fifty years ago in *D'Oench.*" (attribution omitted)).

---

[11]*D'Oench, Duhme* is codified at 12 U.S.C.A. § 1823(e) (West 1989).

In the instant case, the plaintiffs' alleged oral loan agreement was never reduced to writing, and thus does not appear in MBank's records. At most, MBank's records reveal a loan application completed for the plaintiffs' behalf, describing the purpose and terms of a potential loan. However, as the face of the application plainly evinces, such a document does not constitute a loan contract or promise between the parties. *See* Record Excerpts at 5 ("LOAN APPLICATION") (leaving blank the spaces marked "Div. Committee Action" and "Sr. Loan Committee Action"); *see also Jackson v. FDIC,* 981 F.2d 730, 735 (5th Cir.1992) ("The documents on file with the bank establish only that Jackson applied for a $5,000 loan and that he subsequently cancelled that loan.... Without more, they do not constitute either a contract with, or a promise by, the bank to loan $3,000....").

The plaintiffs maintain that their claims are not barred by *D'Oench, Duhme,* because they did not lend themselves to a scheme or arrangement whereby banking authorities would likely be misled. *See* Brief for Plaintiffs at 34. We disagree. The mere act of failing to properly record an oral loan agreement satisfies *D'Oench, Duhme's* requirement that a borrower engage in a misleading arrangement.[12] *See Kilpatrick v. Riddle,* 907 F.2d 1523, 1527 (5th Cir.1990) ("Unwritten representations ... would naturally mislead an outside examiner, simply because they were unwritten."), *cert. denied,* 498 U.S. 1083, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991); *see also Bowen,* 915 F.2d at 1017 ("Unrecorded agreements—those rooted in the loose soil of casual transactions as much as those that spring from the malodorous loam of outright fraud—are a threat to the ecology of the banking system that we can ill-afford. To check the growth of these hardy perennials, *D'Oench* forces borrowers to bear the risk that their unorthodox plants will bear no fruit."); *Beighly,* 868 F.2d at 784 (stating that *D'Oench, Duhme* applies "even when the borrower does not intend to deceive banking authorities"). We therefore hold that *D'Oench, Duhme* bars the plaintiffs' claims against the FDIC-Receiver as a matter of law, and that the judgment n.o.v. of these claims was proper.

_____

[12]Contrary to the plaintiffs' suggestion, the FDIC-Receiver's knowledge of the alleged oral loan agreement is irrelevant under *D'Oench, Duhme. See First State Bank v. City and County Bank,* 872 F.2d 707, 717 (6th Cir.1989) ("[T]he FDIC's knowledge of the existence of an oral agreement is irrelevant as to the agreement's enforceability."); *FDIC v. O'Neil,* 809 F.2d 350, 353-54 (7th Cir.1987); *FDIC v. Merchants Nat'l Bank,* 725 F.2d 634, 640 (11th Cir.), *cert. denied,* 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984).

## III

For the foregoing reasons, we AFFIRM the judgment n.o.v.