# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO.03-00-00683-CV

Great American Products, Appellant

v.

Permabond International, a Division of National Starch and
Chemical Company, Appellee

---

**FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
NO. C98-504A, HONORABLE DON G. HUMBLE, JUDGE PRESIDING**

Appellant Great American Products (AGreat American@) appeals the district court=s judgment that Great American take nothing in its suit against appellee Permabond International (APermabond@). Great American sued Permabond on a variety of tort, extra-contractual, statutory, and contract theories, claiming that Permabond sold defective adhesive which caused certain product failures and economic losses. The jury failed to find for Great American on any of its tort, extra-contractual, or statutory theories. Although the jury answered favorably for Great American on certain unconditionally submitted issues, the jury also affirmatively found that Great American had agreed to be bound by the warranty disclaimer and limited remedy provisions contained in Permabond=s invoices. Great American moved for judgment, asking the trial court to disregard the jury=s finding that Great American had agreed to the warranty disclaimer and limited remedy provisions. Permabond also moved for judgment, asserting that the jury finding that Great American had agreed to be bound by the warranty disclaimer and limited remedy provisions rendered immaterial its findings relating to any breach of warranty, breach of agreement, damages, and attorney=s fees. The trial court rendered judgment that Great American take nothing. After the court denied its motion for new trial, Great American appealed. We will affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises out of the sale of an industrial adhesive by Permabond to Great American. Great American is a wholesale manufacturer and assembler of various gift items, including glassware affixed with pewter emblems. Great American uses industrial adhesive to attach pewter emblems to the glassware. The glassware is then placed under an ultraviolet light which cures the adhesive (UV

adhesive), permanently affixing the emblem.  Great American has claimed to use this process, or one similar

to it, successfully for approximately twelve years prior to the dispute with Permabond.

Permabond is a division of National Starch and Chemical Company (ANational Starch@).

National Starch makes a variety of industrial products that in turn are incorporated into other products.

Permabond manufactures and sells various types of UV adhesive, including the UV adhesive at issue in this

case.

Before the events giving rise to this suit, Great American had purchased and used other

Permabond adhesives for several years.  In December 1994, Permabond suggested that Great American

begin purchasing a Permabond UV adhesive.  However, after looking at Great American=s operation,

Permabond=s sales engineer told Great American that it did not currently have a suitable product that would

work with Great American=s system.

In late 1995, Permabond informed Great American that it had developed an adhesive

suitable for Great American.  According to Great American, Permabond=s representatives consistently

assured Great American that changing to Permabond=s adhesive would not require Great American to

substantially modify its existing manufacturing process.  Permabond delivered the adhesive for testing.  After

sampling and testing the Permabond adhesive, Great American agreed to purchase it, signing a blanket

order agreement in March 1996.

The blanket order agreement stated in pertinent part that: AAll sales are subject to National

Starch and Chemical Company=s standard terms and conditions as set forth in its invoices.@ According to

Great American, Permabond did not explain those terms and conditions, but simply began shipping the

adhesive.  In response, Permabond contends that during the course of dealing with Great American over the years, it consistently communicated the fact that Permabond would not and could not be responsible for damages that Great American might later claim resulted from the use of Permabond=s adhesives. Furthermore, it claims that this limitation was conveyed in each invoice sent with the purchase of a Permabond product and that Great American never disputed any of the disclaimers it received from Permabond.

With each shipment of its adhesive to Great American, Permabond sent a two-sided invoice that stated the quantity and price on the front and set out the Aterms of sale@ on the reverse side.  Among the terms was a disclaimer of warranty which stated in pertinent part:

1. SELLER HEREBY EXCLUDES ANY AND ALL WARRANTIES, GUARANTEES, OR REPRESENTATIONS WHATSOEVER, EXPRESS OR IMPLIED AND EXPRESSLY EXCLUDES ANY AND ALL WARRANTIES AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE . . . . BUYER ASSUMES RISK FOR RESULTS OBTAINED FROM USE OF THESE GOODS WHETHER USED ALONE OR IN COMBINATION WITH OTHER PRODUCTS.  SELLER=S LIABILITY HEREUNDER SHALL BE LIMITED TO REPLACEMENT OF ANY GOODS WHICH ARE NOT OF SELLER=S STANDARD QUALITY, AND SUCH REPLACEMENT SHALL BE BUYER=S EXCLUSIVE REMEDY.

As evidenced by the disclaimer, the invoice provided that replacement was the exclusive remedy for nonconforming adhesive.[1]

---

[1] The invoice also stated:

2. While Seller may from time to time offer recommendations and advice with respect to the use of its products, it is understood that Buyer, in acting on any such recommendation or advice does so entirely at its own risk.

. . . .

9.  THE GOODS COVERED BY THIS INVOICE ARE SOLD EXPRESSLY ON THE CONDITION OF BUYER=S ASSENT THAT THESE TERMS OF SALE, INCLUDING THE EXCLUSION OF WARRANTIES GOVERN THIS PURCHASE AND SALE.  BUYER=S FAILURE TO OBJECT TO THESE TERMS OF SALE WITHIN FIVE DAYS AFTER THE DATE OF SELLER=S ACKNOWLEDGMENT & TERMS OF SALE (IF SUCH AN ACKNOWLEDGMENT WAS MADE TO HIS ORDER) OR BUYER=S TAKING DELIVERY OF ANY GOODS SUPPLIED HEREUNDER, WHICHEVER IS SOONER, SHALL CONSTITUTE SUCH ASSENT.

Great American timely remitted the payments charged on each invoice. However, Great American claims it never expressly accepted the Aterms of sale@ on the invoices. Permabond contends the invoice disclaimer put Great American on notice that Great American would have no recourse for relying on the recommendations or advice of Permabond, and Great American agreed that its exclusive remedy would be replacement adhesive.

The parties dispute the extent of the express warranty made to Great American by Permabond. Great American contends Permabond expressly warranted that the adhesive it supplied would be suitable for use in Great American=s manufacturing process, without substantial modification, and would perform satisfactorily if implemented into that process. Permabond contends it made only a limited warranty that it would provide Great American with its standard quality adhesive.

The blanket order agreement expired on April 30, 1997. Great American continued to purchase adhesive from Permabond but claims that after the blanket order agreement expired, there was no expression, either in Great American=s purchase order or in Permabond=s response, and no other evidence which suggested the parties had continued to be bound by the Aterms of sale@ set forth in the invoices. Permabond contends that Great American never informed Permabond that it did not consider itself bound by the warranty exclusion and limited remedy provisions set out on each invoice. Permabond also contends that the exclusion of warranty provisions and limited remedy provisions in the invoices were part of the parties= course of dealing and course of performance and were in accord with standard industry practices.

In July 1997, Things Remembered, a customer of Great American, reported that the pewter emblems on its glass mugs were falling off. The first failures reported by Things Remembered were all

**6**

produced at an Anchor Hocking plant in Ohio, which had been employed to do some of Great American=s manufacturing while the company relocated to Texas from Illinois. Great American claims that the plant had just begun using the Permabond adhesive and had used the lighting system that was recommended by Permabond to properly cure the adhesive. Subsequently, more problems were noted by Great American in products manufactured at its New Braunfels plant.

After Great American became aware of problems with the UV adhesive, it notified Permabond. Permabond dispatched representatives to the New Braunfels facility to investigate the problem. After running tests on the adhesive, Permabond informed Great American that it thought Great American=s curing light source was inadequate and this was the source of the problem. Great American claims that Permabond did not acknowledge its earlier assurances that its product was compatible with Great American=s existing manufacturing process. Furthermore, Great American claims that Permabond did not explain the Anchor Hocking problems which occurred despite Great American=s use of Permabond=s preferred fusion-lighting system.

After testing the adhesive, Permabond supplied Great American with an alternative UV adhesive to address the problems that Great American had experienced. Great American used this adhesive for a short period, but eventually returned to the original adhesive it used before the Permabond product.

Great American filed suit in June 1998. The case was tried before a jury. The trial court submitted the charge proposed by Great American which included the following liability theories: deceptive trade practices, breach of warranties, breach of contract, fraud, negligent misrepresentation, and negligence.

7

As to the deceptive trade practices claims, fraud claims, and negligent misrepresentation claims, the jury failed to find Permabond liable.

When asked in Question No. 3 and Question No. 4 whether Permabond failed to comply with *any* warranty and whether this failure was a producing cause of damages to Great American, the jury answered affirmatively.[2] The questions submitted did not differentiate between express and implied warranties. For the breach of warranty claim, the jury awarded Great American $70,000 for repair and replacement expenses and $250,000 in lost profits.

---

[2] Question No. 3 of the jury charge was ADo you find that Permabond failed to comply with any warranty? You are instructed . . . that >failed to comply= means any of the following.@ The question then listed and defined the following warranties: (1) express warranty; (2) the implied warranty of merchantability; (3) the implied warranty of fitness for a particular purpose; and (4) the implied warranty of good and workmanlike performance. Question No. 4 of the jury charge was A Was the failure, if any, of Permabond to comply with a warranty a producing cause of damages to GAP?@

In a series of answers to the sub-parts of Question No. 7,[3] the jury found that Great American and Permabond had agreed to the following: (A) Permabond would provide adhesive suitable for use in Great American=s manufacturing facility, (B) Permabond would provide technical service regarding adhesive supplied for use in the Great American process, (C) Great American would pay Permabond for adhesive it supplied that was suitable for use in Great American=s manufacturing facility, and (D) the parties would be bound by the standard terms and conditions as stated in Permabond=s invoices.

---

[3] Question No. 7 of the jury charge was ADid the agreement between GAP and Permabond include any of the following terms: (A) Permabond would provide adhesive suitable for use in GAP=s manufacturing facility, (B) Permabond would provide technical service regarding adhesive supplied for use in the GAP process, (C) GAP would pay Permabond for adhesive it supplied that was suitable for use in GAP=s manufacturing facility, (D) The parties would be bound by the standard terms and conditions as stated in Permabond=s invoices.@ The jury answered Ayes@ to each subpart of Question No. 7.

In Question No. 8,[4] which dealt with the breach of contract claim, the jury found Permabond failed to comply with the terms of the agreement inquired about in Question No. 7. As to the breach of contract claim, the jury awarded Great American $70,000 for repair and replacement expenses and $250,000 in lost profits.

Following the return of the jury=s verdict, but before the rendition of judgment, Permabond moved for entry of judgment in its favor asserting that the jury=s answer to Question No. 7(D), that the parties were bound by the terms and conditions set forth in the invoices, negated the jury=s findings relating to the breach of warranty and breach of contract claims because the invoices effectively disclaimed express and implied warranties. Alternatively, Permabond requested that the court enter judgment *non obstante veredicto* (notwithstanding the verdict). *See* Tex. R. Civ. P. 301.

In response, Great American contended that the jury=s answers required judgment in its favor. Great American asked the trial court to disregard the jury=s finding that Great American had agreed to be bound by the standards and terms stated in Permabond=s invoices, which included the warranty disclaimer and limited remedy provision. It argued that because Permabond had expressly warranted its goods and services, its attempted disclaimer was ineffective.

The trial court rendered judgment that Great American take nothing. Great American then moved to modify the judgment and alternatively for a new trial, but the court denied the motion. In five issues on appeal, Great American contends that: (1) the trial court erred in rendering judgment that Great

---

[4] Question No. 8 of the jury charge was A Did Permabond fail to comply with the agreement?@

American take nothing because the blanket order agreement had expired at the time of the breach and a proper construction of the verdict entitles Great American to recover damages for both breach of warranty and breach of contract; (2) even if there were an effective disclaimer of implied warranty, the trial court erred in not rendering judgment that Great American recover for breach of express warranty, because the disclaimer was legally inoperative as to the express warranty; (3) even if there were an effective disclaimer of warranty, the trial court erred in not rendering judgment that Great American recover for breach of contract, because, as a matter of law, Permabond=s invoices did not disclaim responsibility for breach of the agreement; (4) even if there were an effective limitation of remedy, the trial court erred in not rendering judgment that Great American recover damages, because, as a matter of law, the limitation of remedy provision in Permabond=s invoices failed of its essential purpose; and (5) the trial court erred in not rendering judgment that Great American recover attorney=s fees awarded by the jury.

## DISCUSSION

### *Breach of Express Warranty*

In its second issue, Great American complains that the trial court erred in not rendering judgment that it recover for breach of express warranty. Great American asserts that the jury=s affirmative answer to Question No. 3 regarding breach of *any* warranty necessarily means that the jury found that Permabond breached an *express* warranty. We disagree.

The question regarding breach of warranty submitted to the jury states in pertinent part:

Do you find that Permabond failed to comply with any warranty?

**11**

You are instructed in answering this Question that the term Afailed to comply@ means any of the following:

$     Failing to comply with an express warranty

$     Implied Warranty of Merchantability

$     Implied Warranty of Fitness for Particular Purpose

$     Implied Warranty of Good and Workmanlike Performance

Answer AYes@ or ANo.@

Because of the ambiguous nature of the jury question, one cannot discern whether the jury=s affirmative answer relates to one or more of the implied warranties or to the express warranty. Based on the plain meaning of the instruction, an affirmative answer to Aany of the following@ is *not* a finding of breach of express warranty.

In order to recover for the breach of an express warranty, a plaintiff must prove: (1) an express affirmation of fact or promise by the seller relating to the goods; (2) that such affirmation of fact or promise became a part of the basis of the bargain; (3) that the plaintiff relied upon said affirmation of fact or promise; (4) that the goods failed to comply with the affirmations of fact or promise; (5) that the plaintiff was injured by such failure of the product to comply with the express warranty; and (6) that such failure was the proximate cause of plaintiff=s injury. *Morris v. Adolph Coors Co.*, 735 S.W.2d 578, 587 (Tex. App.CFort Worth 1987, writ ref=d n.r.e.). Great American had the burden to plead, prove, and submit all elements but failed to do so. In essence, Great American is asking this Court to deem a finding of breach of express warranty based on an ambiguous jury submission so as to invalidate the trial court=s judgment. This we will not do.

**12**

Great American requested Jury Question No. 3, and the trial court submitted it over Permabond=s objections. The jury answered this question in the affirmative. It is unknown whether the jury found an express warranty by Permabond. Even assuming the validity of Great American=s argument regarding express warranties, where a jury=s findings are capable of two constructions and one would reconcile the findings in favor of the judgment, reconciliation in favor of the judgment that was rendered on the jury verdict is mandatory. *Materials Mktg. Corp. v. Spencer,* 40 S.W.3d 172, 176 (Tex. App.CTexarkana 2001, no pet.). We overrule issue two.

### Disregarding Jury Findings

In issues one and three, Great American argues that the trial court erred by disregarding, or failing to reconcile, certain jury findings in support of the jury=s verdict. Underlying these issues is the apparent conflict between the jury=s answers to Questions Nos. 3 and 8 (that Permabond breached a warranty and breached its agreement) and the jury=s answer to Question No. 7(D) (that Great American agreed to be bound by the standard terms and conditions in Permabond=s invoices).[5] As discussed, the

---

[5] In issue one, Great American specifically claims that because the blanket order agreement had expired at the time of breach, the jury findings of breach of warranty and breach of agreement can be reconciled by construing the answer to Question No. 7(D) as a finding that the parties had *once* agreed to be bound, but that the agreement was not in force when the breach occurred. However, that is not how the jury charge reads. The jury was instructed that the parties had Aentered into an agreement regarding the purchase and sale@ of the Permabond adhesive. The jury was asked whether that agreement included the agreement to be bound by the standard terms contained in Permabond=s *invoices.* In answering Question No. 7, the jury was directed to consider the parties= course of dealing, usage of trade, and course of performance. There is nothing in the charge or question that referenced the blanket order agreement. In addition, there is nothing to indicate the jury was thinking about some prior, expired blanket order agreement when it answered Question No. 7. In answering Question No. 7(D) affirmatively, the jury expressly found that Great American had agreed to be bound by the terms and conditions stated in the invoices; therefore, the terms

**13**

standard terms and conditions in Permabond=s invoices disclaimed all warranties and limited Great American=s remedy to replacement of the glue.

A trial court may disregard a jury=s answers that have no support in the evidence or when the answers to the questions are immaterial. *Southeastern Pipe Line Co., Inc. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1997); *see also Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 577 (Tex. 1991) (rendering take nothing judgment and holding that limited warranty and limited remedy provision rendered irrelevant any jury finding regarding lost profits). A question is immaterial when it should not have been submitted, it calls for a finding beyond the province of the jury, *e.g.*, a question of law, or when it was properly submitted but has been rendered immaterial by other findings. *Id*. A trial court may disregard a finding on an immaterial issue and render judgment on the remaining findings; such a judgment is not considered a judgment notwithstanding the verdict. *Kuenhoefer v. Welch*, 893 S.W.2d 689, 692 (Tex. App.CTexarkana 1995, writ denied).

In the instant case, Permabond filed a motion for judgment in which it urged the trial court to disregard the jury=s findings of breach of warranty and breach of agreement based on the jury=s affirmative answer to Question No. 7(D), finding that Great American agreed to be bound by the standard terms and conditions, *i.e.*, the disclaimer of warranties contained in its invoices. In the alternative, Permabond asked for a judgment notwithstanding the verdict based on insufficient evidence. The trial court ultimately rendered final judgment for Permabond that Great American take nothing by its suit.

---

and conditions in the invoices were found to be part of the parties= agreement.

We agree with Permabond that the jury=s answer to Question No. 7(D) rendered its answers relating to breach of warranty immaterial. In answering Question No. 7(D), the jury impliedly found that Great American agreed to be bound by the standard terms and conditions, including the disclaimer and limitation of remedy, contained in its sales invoices. Once the jury found that Great American agreed to be bound by the standard terms and conditions on Permabond=s invoices, the jury=s findings of breach of warranty became immaterial. A disclaimer of warranty is an affirmative defense. Tex. R. Civ. P. 94; *Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 280 (Tex. App.CHouston [14th Dist.] 1999, pet. denied). An affirmative defense is by its nature Aone of confession and avoidance@ which seeks to establish an independent reason why the plaintiff should not prevail. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 212 (Tex. 1996) (jury=s finding of affirmative defense of justification rendered immaterial finding of actual malice).

In addition, the jury=s answer to Question No. 7(D) rendered its answer to Question No. 8 immaterial because Permabond expressly provided in its invoices that a buyer=s exclusive remedy for substandard goods was limited to replacement of the goods. By answering all sub-parts to Question No. 7 in the affirmative, the jury specifically found: (1) Permabond agreed to provide suitable adhesive and technical service to Great American; (2) Great American agreed to pay Permabond for the adhesive if suitable; and (3) both parties agreed to be bound by the terms included in Permabond=s invoices. In answering Question No. 8 affirmatively, the jury found that Permabond had failed to comply with its part of the agreement, specifically, providing suitable adhesive and technical service to Great American. At the same time, by finding that the parties agreed to be bound by the terms and conditions of the invoices, the

**15**

jury also found that the remedy for failure to comply with the agreement was limited to replacement of the defective product.

The record reveals that the issue of disclaimer was addressed throughout the trial, during closing arguments, and was raised by Permabond in its pleadings below. Permabond=s general manager testified that Permabond=s disclaimer of warranty and limitation of remedy language was standard in the chemical industry, or a Ausage of trade.@ Additionally, from the testimony of Great American=s CEO and purchasing agent, the jury could infer that Great American, based on its prior course of dealing with Permabond, should have been aware of the disclaimer language contained on Permabond=s invoices and correspondence. Furthermore, the preface to Question No. 7 of the court=s charge specifically instructed the jury on course of dealing and usage of trade:

A Acourse of dealing@ is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions or other conduct.

A Ausage of trade@ is any practice or method of dealing having such regularity of observance in place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question.

Where an agreement for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.

Finally, we note that Great American requested the charge of which it now complains. In summary, we hold that the trial court did not err by disregarding the jury=s answers to the breach of warranty and breach of agreement questions. We overrule issues one and three.

**16**

***Limited Remedy Failed of Essential Purpose?***

In issue four, Great American urges that, as a matter of law, the limited remedy Permabond provided in its invoices failed of its essential purpose and that the jury=s inconsistent answers can be reconciled on this basis. Permabond responds that Great American failed to submit a jury question on the issue or raise the issue in its pleadings below and thus has waived it on appeal. Great American counters that its failure to submit a jury question on whether Permabond=s limited remedy failed of its essential purpose is not fatal to its pursuit of this issue on appeal. *See Mercedes Benz of N. Am., Inc. v. Dickenson*, 720 S.W.2d 844 (Tex. App.CFort Worth 1986, no writ). In *Mercedes Benz*, the court of appeals considered the issue of whether a limited remedy failed of its essential purpose, reasoning that the defendant could not complain of the plaintiff=s failure to plead the issue or to submit a jury question on the issue in the absence of special exceptions to the plaintiff=s pleadings. *Id.* at 853-54. The court relied on *Roark v. Allen* in which the supreme court rejected the appellate court=s determination that the plaintiffs= petition was insufficient to support the submission of special issues to the jury on the issue of negligence. 663 S.W.2d 804, 809-10 (Tex. 1982). However, unlike the instant case, the *Roark* plaintiffs submitted a jury question on the issue of negligence, although they did not plead it specifically in their petition. *Id*. at 809. In the instant case, Great American not only failed to plead but also failed to submit a jury question on the issue of whether the limited remedy failed of its essential purpose; therefore, we hold it has waived this issue on appeal. Tex. R. App. P. 33.1; *see also Henderson v. Ford Motor Co.*, 547 S.W.2d 663, 668-69 (Tex. App.CAmarillo 1977, no writ).

**17**

*Attorney=s fees*

In issue five, Great American claims the trial court erred in not rendering judgment on the jury=s award of attorney=s fees to Great American. To recover attorney=s fees under Section 38.001 of the Texas Civil Practice and Remedies Code, a party must (1) prevail on a cause of action for which attorney=s fees are recoverable, and (2) recover damages. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 38.001 (West 1997); *Green Int=l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (citing *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 437 (Tex. 1995)). Great American has neither prevailed on any cause of action for which attorney=s fees are recoverable, nor has it recovered any damages. Issue five is overruled.

## CONCLUSION

Having overruled all of Great American=s issues on appeal, we affirm the judgment of the district court.

David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: October 10, 2002

Publish

**18**