# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 16-10166

—————

United States Court of Appeals
Fifth Circuit

**FILED**

October 3, 2017

Lyle W. Cayce
Clerk

RONALD G. BECKER,

Plaintiff–Appellee

v.

CONTINENTAL MOTORS, INCORPORATED,

Defendant–Appellant

—————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:13-CV-520

—————

Before JONES and OWEN, Circuit Judges, and ENGELHARDT,* District
Judge.

PER CURIAM:**

Ronald Becker filed this suit against Continental Motors, Inc.
("Continental"), alleging breach of express warranty and violations of the
Texas Deceptive Trade Practices Act ("DTPA") in relation to an allegedly
defective engine that Becker purchased for his private aircraft. By the parties'
consent, a magistrate judge tried the case and found for Becker, granting him

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 16-10166

damages, attorneys' fees, and a declaratory judgment.  Although we AFFIRM the magistrate judge's declaratory judgment as to the existence of a defect, we REVERSE the conclusions that Continental breached its express warranty or violated the DTPA.  We therefore also REVERSE the award of attorneys' fees.

## BACKGROUND

Becker, a resident and citizen of Texas, purchased a new aircraft engine from Continental, a Delaware corporation with its principal place of business in Alabama.  Becker purchased Continental's engine based in part on the engine and cylinder warranties that accompanied the purchase.  The engine warranty provided that Continental would

> at its option repair or replace on an exchange basis any engine, component or part manufactured or supplied by it which . . . is returned to a [Continental] representative authorized to handle the engine covered by this warranty and which upon examination is found to the satisfaction of [Continental] to be defective in material or workmanship . . . .

The warranty continued:

> [Continental] will pay for reasonable labor costs associated with repairs or replacements . . . and for "troubleshooting" costs associated with identifying the need for such repairs or replacements, when coordinated through an authorized [Continental] representative.

The cylinder warranty was materially indistinguishable.

Becker had the engine installed by Stephen Sherman, an experienced aircraft mechanic at Dugosh Aircraft Service Company ("Dugosh"), who installed the engine in accordance with Continental's instructions and specifications.  Becker flew the aircraft with the new engine for a total of 336.5 hours over seventeen months—within the warranty period—before taking the aircraft back to Dugosh for routine maintenance.  While at Dugosh for the maintenance, Becker informed Sherman that he believed the engine had a high oil consumption rate.

2

No. 16-10166

Sherman reported the oil issue to Roger Gradle, Continental's Warranty Administrator, who instructed Sherman to complete and submit a warranty claim, which Sherman did. Continental then asked Sherman to remove the cylinders from the engine and send them to G&N Aircraft, Inc. ("G&N"). G&N was authorized by Continental to inspect and repair the cylinders pursuant to the warranty. G&N inspected and overhauled the cylinders, and the magistrate judge found that G&N "rejected some of the parts/materials contained in the Cylinders, specifically the exhaust guides." G&N's work order reflected that the work was done pursuant to Continental's warranties, and Continental paid for the work. G&N returned the cylinders to Dugosh, who reinstalled them.

The oil issue not only persisted, but worsened. The magistrate judge found that Sherman at Dugosh properly reinstalled the cylinders on the engine, though Continental contends that Sherman did not follow the proper "break in" procedure to ensure "that adequate lubrication [was] being provided to newly installed components and that the piston ring seating [would] occur as soon as possible." Continental contends that Sherman did not properly perform the "ground phase" of the break-in procedure by failing to "cowl" the engine and did not attempt the "test flight" phase. Sherman did not perform the test flight portion because he determined the plane was not airworthy.

Sherman and Continental continued to troubleshoot the issue, and Gradle again instructed Sherman to return the cylinders to G&N for further inspection or repair. G&N was again authorized by Continental to inspect and repair the cylinders, and Continental again paid G&N for the work pursuant to the warranties. After performing inspection and maintenance work, G&N returned the cylinders to Dugosh.

Sherman reinstalled the cylinders, but the problems persisted. Sherman again refused Gradle's suggestion to break in the cylinders by flying the plane

3

because he considered the plane not airworthy. Sherman did, however, perform a ground run to simulate flights.

About four months after Becker reported the oil problem to Sherman, Gradle called Becker and, in a voicemail, requested that Becker return the engine to Continental's factory in Alabama. After Becker later responded that returning the engine seemed like a "path forward," Gradle informed Becker that he would need to sign a work order authorizing Continental to do work on the engine. This conversation concerned Becker because it indicated that the engine issues might not be covered under the warranties. Becker asked to see the work order, which included the statement: "An express mechanics lien is hereby acknowledged on above aircraft to secure the amount of service and/or repairs thereto." Becker refused to sign the work order and did not send the engine to Continental.

Becker then retained an attorney, who sent Continental a demand letter pursuant to the Texas Deceptive Trade Practices Act (DTPA). Tex. Bus. & Com. Code Ann. § 17.50 (West 2005). After Continental received the letter, Gradle requested again that the engine be shipped to its factory and indicated to Becker that the work order did not need to be signed. Still, Becker refused to send the engine to Continental. Instead, Becker instituted this suit.

The parties consented to have a magistrate judge try the case. The magistrate judge found that Continental breached the express warranties and violated the DTPA based on its breach of the express warranties. The magistrate judge awarded attorneys' fees for the breach and the DTPA violation. The magistrate judge also issued a declaratory judgment[1] entitling

---

[1] As a threshold matter, the magistrate judge did not comply with Rule 58 because the separate document setting out the final judgment does not include the declaratory relief. The error does not defeat this court's appellate jurisdiction, however. *See McMillan v. MBank Fort Worth, N.A.*, 4 F.3d 362, 367 n. 9 (5th Cir. 1993). The parties have not disputed this issue, thereby waiving any argument based on Rule 58. Thus, as this court has concluded in

No. 16-10166

Becker to a "declaration that the Engine and/or cylinders are defective as defined under the respective warranties."

## STANDARD OF REVIEW

On appeal from a bench trial conducted by a magistrate judge, this court reviews factual findings for clear error and conclusions of law de novo. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). Under the clearly erroneous standard, this court will uphold a finding so long as it is plausible in light of the whole record. *Chemtech Royalty Assocs., L.P. v. United States*, 766 F.3d 453, 460 (5th Cir. 2014). "[W]e apply federal standards of review to assess 'the sufficiency or insufficiency of the evidence in relation to the verdict,' but in doing so we refer to state law for 'the kind of evidence that must be produced to support a verdict.'" *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004) (quoting *Ayres v. Sears, Roebuck & Co.*, 789 F.2d 1173, 1175 (5th Cir. 1986)).

## DISCUSSION

### 1. Breach of Warranty

Under Texas law, the "breach of warranty and breach of contract are distinct causes of action with separate remedies." *Med. City Dall., Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60 (Tex. 2008). To recover for breach of an express warranty, Texas courts require the plaintiff to prove:

> (1) an express affirmation of fact or promise by the seller relating to the goods; (2) that such affirmation of fact or promise became a part of the basis of the bargain; (3) that the plaintiff relied upon said affirmation of fact or promise; (4) that the goods failed to comply with the affirmations of fact or promise; (5) that the plaintiff was injured by such failure of the product to comply with the express warranty; and (6) that such failure was the proximate cause of plaintiff's injury. *See, e.g.*, *Great Am. Prods. v. Permabond*

---

the past, "there is little to be gained from dismissing now and inflicting this case on another panel later." *Whitaker v. City of Houston, Tex.*, 963 F.2d 831, 834 (5th Cir. 1992).

No. 16-10166

*Int'l, a Div. of Nat'l Starch & Chem. Co.*, 94 S.W.3d 675, 681 (Tex. App.—Austin 2002, pet. denied).

Here, the "affirmation of fact or promise" that Continental made was, in part, to "at its option repair or replace on an exchange basis any engine, component or part manufactured or supplied by it . . . which upon examination is found to the satisfaction of [Continental] to be defective in material or workmanship." Therefore, to establish a breach of warranty, Becker "must show not only that the product was presented to the defendant for repair but also that the defendant failed or refused to repair the defect." *Gen. Motors Corp. v. Garza*, 179 S.W.3d 76, 82 (Tex. App.—San Antonio 2005, no pet.).

Continental argues that it did not breach the express warranty because Becker did not establish (1) that Continental found to its satisfaction that the engine or cylinders contained a defect, (2) that Continental failed or refused to repair or replace the defective engine or cylinders, or (3) that this failure to repair or replace was the "proximate cause" of Becker's injuries.

Under Texas law, "[w]hile the factual determination of what actions were taken is for the fact finder, whether those actions constitute a breach of contract is a question of law for the court." *In re Cano Petroleum, Inc.*, 277 S.W.3d 470, 473 (Tex. App.—Amarillo 2009, no pet.). Relying on the facts as found by the magistrate judge, this court concludes, as a matter of law, that Continental did not breach the express warranty because it did not fail or refuse to repair or replace the engine or cylinders.

Continental never explicitly refused to repair or replace the parts. On the contrary, at the time Becker claimed that Continental breached, Continental had just requested that Becker return the engine to Continental's factory for further work. Nevertheless, the magistrate judge concluded that Continental did not "repair or replace" the parts as required by the warranty for two reasons: (1) because "Continental's actions in attempting to require

Becker to execute the subject work order were grounds for Becker to reasonably conclude that Continental was no longer treating this as a warranty claim and was in breach of the warranty" and (2) because "Continental failed to repair the defective Engine/and or cylinders in a timely manner sufficient to resolve the defective condition." These two factual findings do not support the legal conclusion that Continental breached the express warranty.

First, Becker's belief that Continental may not pay for the work done is not grounds for breach. The magistrate judge found that Becker's belief that Continental would no longer repair the engine under warranty arose when Gradle "indicated to Becker that the Engine and/or cylinder issues might not be covered" under the warranty and that Becker would "need to sign a work order authorizing the work to be done by Continental." After Becker refused to sign the work order and sent Continental a DTPA letter, Gradle again requested that the engine be shipped to Continental and "indicated that the work order form did not need to be signed." Becker still did not send the engine to Continental. He now argues that he refused to do so because "Continental never assured [him] that any other repairs would be under the warranty after he served his DTPA letter, and Continental never assured him that he would not have to pay for the work."

The express warranty did not require Continental to promise that the warranty would cover the problem regardless of what caused the problem. Even if Becker reasonably believed that Continental had promised to ultimately pay for the repair or replace, such a promise was not a "part of the basis of the bargain" that Becker relied upon when purchasing the engine. *See, e.g., Great Am. Prods. v. Permabond Int'l, a Div. of Nat'l Starch & Chem. Co.*, 94 S.W.3d 675, 681 (Tex. App.—Austin 2002, pet. denied). The warranty obliged Continental to "repair or replace" the covered parts which Continental found "to be defective in material or workmanship." In fact, the warranty

plainly excluded payment for certain repairs or replacements, such as those for parts that were "subject to misuse, neglect or accident" or which "ha[d] been, installed, repaired, maintained or altered" in certain ways. It also obliged Continental to "pay for . . . 'troubleshooting' costs associated with identifying the need for such repairs or replacements, when coordinated through an authorized [Continental] representative." Continental had paid for such troubleshooting when G&N inspected and performed work on the cylinders, and G&N was "authorized by Continental to perform the cylinder inspection and repair." The written warranty did not oblige Continental to assure Becker that it would ultimately pay for "any other repairs," as Becker now argues. Even if Becker believed that Continental's behavior suggested that it would pay for all repairs, the express warranty plainly did not make such a promise.

Second, the magistrate judge's finding that Continental failed to repair the engine "in a timely manner" does not support the legal conclusion that Continental breached the warranty. The express warranty does not include a time of performance term. The Texas Supreme Court has "long held that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996). "Under Texas law, time is not of the essence of a contract unless the contract explicitly makes it so or the contract is of such a nature or purpose that it indicates the parties' intention that they must perform the contract at or within the time specified." *Childers v. Pumping Sys., Inc.*, 968 F.2d 565, 568 (5th Cir. 1992); *see also Shaw v. Kennedy, Ltd.*, 879 S.W.2d 240, 246 (Tex. App.—Amarillo 1994, no writ) ("Any intention to make time of the essence must be clearly manifested in the contract, because time is not ordinarily of the essence in a contract, and failure to perform at the exact time called for is not a breach of contract."). Although Becker argues that, under Continental's interpretation, Continental could

have made infinite attempts at repair, "Texas law does not impose a generalized contractual duty of good faith and fair dealing and, in fact, rejects it in almost all circumstances." *Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016) (citing *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983)). Moreover, the facts here do not test the bounds of any such limit on repairs, as Continental had an outstanding request for Becker to send the engine to Continental's factory for the first time.

Becker also relies on *Mercedes-Benz of North America, Inc. v. Dickenson*, but that case is factually and legally distinguishable. 720 S.W.2d 844, 853 (Tex. App.—Fort Worth 1986, no writ). In *Dickenson*, a Texas appellate court affirmed a judgment against an automobile dealer for breaching an express warranty "that the car or repair services were of a particular standard, quality, or grade." *Id.* at 852. The court rejected the dealer's defense that it had not had an adequate opportunity to repair the vehicle, pointing out that the buyer had returned the vehicle to the dealer for repairs at least seven times over the course of eight months. *Id.* at 847. Here, by contrast, Becker refused to send the engine to Continental for repairs. Even if *Dickenson* were factually analogous, the Texas appellate court's rejection of the dealer's defense does not establish a legal requirement that the dealer cure the defect within a specific time. *Id.*

In sum, the express warranty did not oblige Continental to repair or replace the engine in a timely manner or assure Becker that any work done on the engine would be covered by the warranty. Accordingly, Continental did not breach the warranty.

## 2. DTPA

The magistrate judge found that Continental violated the Texas DTPA by breaching the express warranty. Tex. Bus. & Com. Code Ann. § 17.50. Because Continental did not breach the warranty, we reverse the magistrate

judge's finding.  The magistrate judge also awarded Becker attorneys' fees pursuant to the DTPA and the Tex. Civ. Prac. & Rem. Code § 38.001 for breaching the express warranty.  We likewise reverse the award of attorneys' fees.

### 3. Declaratory Judgment

Continental also appeals the magistrate judge's declaratory judgment "that the Engine and/or cylinders are defective as defined under the respective warranties."  Continental argues that the evidence of a defect was legally and factually insufficient.  Based on this court's review of Texas law and the magistrate judge's findings, we affirm the declaratory judgment.

Continental first argues that the declaratory judgment was legally erroneous because Becker's experts did not identify a "specific defect" and instead relied on circumstantial evidence to infer a defect's existence.  Most of the cases that Continental cites, however, involve products liability claims for personal injury or property damage.  *See, e.g, Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572 (Tex. 2006); *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797 (Tex. 2006); *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004).  Products liability claims usually require plaintiffs to overcome evidentiary hurdles that do not apply in other contexts.  For instance, a manufacturing defect claim requires showing that a specific defect made a product "unreasonably dangerous."  *See, e.g, Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 352 (Tex. 2015).

Although this case, like many Continental cites, involves a defective product, this court's analysis must focus on the warranty at issue and not on the requirements for products liability claims more generally.  Under Texas law, a claim for breach of express warranty sounds in contract, not in tort. *See Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60-62 (Tex. 2008).  Indeed, when a plaintiff suffers only economic loss from damage to the product

itself, damages cannot be recovered via strict products liability: "[r]ecovery of such damages must be for breach of contract or warranty." *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 241-42 (Tex. 2014). Here, Becker's only injury was the economic loss he suffered from being unable to use the defective product. He does not allege that the defective product caused damage to him or to his other property. The alleged injury thus underscores that Becker's claim sounds in contract.

Because Becker's claim sounds in contract, this court must "look to well-established rules for interpretation and construction of contracts" to determine Becker's burden of proof. *See Carlisle Corp.*, 251 S.W.3d at 60-61. The language of the express warranty itself therefore governs the specificity with which Becker must identify a product defect. For example, in *Building Products Plus, Co., L.C. v. TAMKO Building Products, Inc.*, the warranty at issue covered failures occurring "as a direct result of a manufacturing defect." No. 01-12-00073-CV, 2013 WL 5604738, at *11-13 (Tex. App.—Houston [1st Dist.] Oct. 10, 2013, no pet.) (mem. op.). Because of this warranty language, the plaintiff was required to identify a specific defect in order to prove that the product failure was the "direct result" of that defect. *Id.* at *12. Similarly, in *Leifester v. Dodge Country, Ltd.*, the warranty covered only "mechanical failure[s] caused by a defect in materials or workmanship." No. 03-06-00044-CV, 2007 WL 283019, at *1 (Tex. App.—Austin Feb. 1, 2007, no pet.) (mem. op.). The *Leifester* court granted summary judgment for the defendant because the plaintiff failed to explain how the mechanical failure in question was "caused by a product defect." *Id.* at *5.

Unlike the warranties in *Leifester* and *Building Products*, Continental's warranty does not require proof that a specific defect either caused or directly caused some mechanical failure. Instead, the warranty obliges Continental to repair or replace any part or component "which upon examination is found to

the satisfaction of [Continental] to be defective in material or workmanship." Whereas the warranties in the other two cases "required more proof than the existence of the defect," this case does not. *Building Products*, 2013 WL 5604738, at *12. Accordingly, the magistrate judge allowed Becker to meet his burden of proof by establishing that it was more likely than not that some defect in material or workmanship existed. The express warranty in this case does not require Becker to do more than this. As stated above, this court "will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained." *Tenneco*, 925 S.W.2d at 646.

Rejecting Continental's legal challenge to the declaratory judgment, we find no clear error in the magistrate judge's factual determinations. The magistrate judge determined that a defect in material or workmanship was evidenced by (1) the high rate of oil consumption after minimal use of the engine; (2) the entry of excessive oil into the combustion chamber and multiple associated issues; (3) the fact that G&N specifically found that the cylinders were defective by rejecting and replacing the exhaust guides in September 2012; (4) Sherman's "credibl[e]" testimony that the cylinders were defective given the oil control problem and the absence of other causes apart from a manufacturing defect or error on the part of G&N; and (5) the fact that Continental's own expert witness recommended after his inspection that the cylinders be replaced to correct the oil consumption problem. These factual findings support the judgment and are "plausible in light of the record as a whole." *Chemtech Royalty Assocs., L.P. v. United States*, 766 F.3d 453, 460 (5th Cir. 2014) (quoting *United States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009)). We therefore will not reverse the magistrate judge's declaratory judgment.

No. 16-10166
\*    \*    \*

For the foregoing reasons, we **REVERSE** the judgment that Continental breached the express warranty and violated the DTPA and the award of attorneys' fees.  We **AFFIRM** the declaratory judgment.